David Allen LEE, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–05–00574–CR.

Court of Appeals of Texas,
Dallas.

March 1, 2006.

Discretionary Review Refused
May 24, 2006.

**652**

Stephen A. Collmer, Duncanville, for Appellant.

John R. Roach, Crim. Dist. Atty. Andrea L. Westerfeld, Asst. Crim. Dist. Atty., McKinney, for State.

Before Justices O'NEILL, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

After a trial before the court, appellant David Allen Lee was convicted of aggravated sexual assault of a child and indecency with a child by contact. *See* TEX. PEN. CODE ANN. §§ 22.021(a)(1)(B), 21.11(a)(1) (Vernon 2003 & Supp.2005). He was sentenced to fifteen years' imprisonment for each offense. On appeal he asserts: (a) the evidence is legally and factually insufficient to support his convictions; (b) he lacked effective assistance of counsel at trial; (c) the trial court erred in failing to conduct an evidentiary hearing on his motion for new trial; and (d) the trial court erred in not granting his motion for new trial. We affirm the trial court's judgments.

### I. Factual and Procedural Background

M.K.'s parents divorced when she was five years old. After a bitter custody dispute, she lived primarily with her father, Danny, and his wife, Amelia. M.K. did not get along with her stepmother, Amelia. M.K. began frequently visiting the home of appellant, a neighbor and friend of her father. Her father ordinarily worked two jobs, but during October he also worked at the State Fair of Texas on Thursday through Sunday night. Danny took M.K. to work with him at the State Fair on non-school nights so she would not be home alone with Amelia. M.K. had to stay in his truck all night with the dog. On school nights during the State Fair, M.K. slept at

appellant's home. This occurred approximately six times a year in 1999 and 2000 when she was approximately eleven and twelve years old.

On the nights M.K. stayed at appellant's home, she slept on a pallet in the room shared by appellant's two children. She testified that appellant started touching her inappropriately when he came in to say goodnight to the children. He began by scratching her back underneath her shirt as she lay on the floor. He asked her, "Does that feel good?" She replied that it did.

Appellant gradually increased his contact each time M.K. spent the night at his home, next moving to touch her buttocks and then her breasts, each time moving his hand beneath her clothing and asking her if it "felt good." Appellant then progressed to rubbing his hand "up and down" inside her vagina, penetrating the vaginal lips. He told M.K., "This is what it feels like to have sex." Appellant touched M.K. "most of the time" when she stayed at his house, but she still felt it was better than staying home with her stepmother. The touching never occurred when she visited after school, only when she slept at appellant's home.

On one occasion, appellant came into the children's room with his penis hanging out of his shorts. M.K. told him she could see it, and he said "thanks" and left the room. Another time, he gestured at her by holding his fingers by his mouth in a "v" shape and flicking his tongue between his fingers. M.K. did not know what the gesture meant, so she asked her mother about it and was told it referred to oral sex. She testified that she never told an adult about appellant's actions during the time they were occurring because "adults don't believe children." She did, however, tell her friends Katie and Christina.

In January 2001, M.K. moved in with her mother, Mary Halstead. In March 2001, she told her mother about appellant's actions. Halstead wanted to call the police immediately, but M.K. asked her not to because she was embarrassed and no longer felt that she was in danger. M.K. also admitted she was ashamed and "thought it was her fault." Halstead testified that she told her mother and her attorney about the outcry, but neither reported the abuse. She also told the mediator in her custody dispute, who advised her not to bring out the allegations because it would "expedite things" to stay quiet. Her attorney agreed. Halstead called the police in October 2001, approximately seven months after M.K.'s outcry.

Appellant and his wife, Bridget Lee, both testified that M.K. stayed overnight on only one occasion. Bridget Lee testified that the children watched movies before falling asleep and she checked on them every fifteen minutes so she could turn off the television. Appellant denied ever molesting M.K., although he did acknowledge he was convicted of a prior sex offense.[1]

Detective Burke, the investigating officer, testified M.K.'s testimony remained consistent, which is an indication of truthfulness. He also testified that there was no animosity between M.K. or her parents and appellant. Claudia King, a forensic interviewer with the Children's Advocacy Center, testified about her interview with M.K. King believed M.K. was truthful. M.K. told King that the events did not happen all at once, but over a period of time. M.K. told King how appellant began scratching her back and moved lower until he was rubbing inside her vagina. M.K. explained to King that appellant's actions felt good, but she was scared and did not

---

1. It was disclosed at punishment that this conviction was for molesting his niece. He was also accused of molesting another niece, but she died prior to the trial on that charge.

like it. King also said that M.K. did not want to speak about the abuse to any men, including male police officers or her father.

Amelia, M.K.'s stepmother, testified that M.K. was not truthful. Halstead's first husband testified that Halstead was not truthful and that she had made allegations of sexual abuse against him during their divorce and subsequent custody battle.

Additionally, Dr. Catherine Roberts testified about treating M.K. Roberts is Danny's sister-in-law and a psychiatrist. She treated M.K. for problems with lying and stealing and testified that M.K. was not a truthful person. She also testified that M.K. had never mentioned the abuse to her. M.K. explained that she did not say anything to Dr. Roberts because she was related to her father and "she probably told him a lot of stuff that I told her."

Appellant was tried before a jury in August 2003. The jury was unable to reach a verdict and a mistrial was declared. In January 2005, appellant waived a jury trial and the case was submitted to the trial court. The trial court, which was presided over by the same judge who presided over appellant's aborted jury trial, took judicial notice of the testimony from appellant's first trial and, after hearing additional live testimony, found appellant guilty on both counts. Appellant filed a motion for new trial. The trial court held a hearing on the motion and received evidence by affidavit. The trial court did not expressly rule on the motion, and it was overruled by operation of law. *See* Tex. R.App. P. 21.8(a), (c); Tex.R. Civ. P. 329b(c).

## II. Legal and Factual Sufficiency of the Evidence

### A. Applicable Law

#### 1. Standards of Review

In his first and second issues on appeal, appellant argues the evidence is legally and factually insufficient to support the findings of guilt by the trial court. Differences exist between a factual sufficiency and legal sufficiency review of the evidence. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000). Further, it is beyond dispute that determining the legal and factual sufficiency of the evidence requires the implementation of separate and distinct standards of review. *Id.*

#### a. Legal Sufficiency of the Evidence

The legal sufficiency of the evidence will be viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Lane v. State,* 151 S.W.3d 188, 191–92 (Tex.Crim.App.2004); *Sanders v. State,* 119 S.W.3d 818, 820 (Tex. Crim.App.2003); *Young v. State,* 14 S.W.3d 748, 753 (Tex.Crim.App.2000). A review of the evidence for legal sufficiency does not involve a reweighing of the evidence or a substitution of the fact finder's judgment. *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App.2000). The fact finder is the exclusive judge of witness credibility, the determiner of the weight accorded to witness testimony, and the reconciler of conflicts in the evidence. *See Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App. 1996). In addition, when reviewing the evidence for legal sufficiency, the evidence is not weighted as favorable and nonfavorable, nor is the appellant's version of the facts adopted. *See Margraves v. State,* 34 S.W.3d 912, 917 (Tex.Crim.App.2000). Further, all evidence, whether properly or improperly admitted, will be considered when reviewing the evidence for legal sufficiency. *See Lockhart v. Nelson,* 488 U.S. 33, 41–42, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); *Johnson v. State,* 967 S.W.2d 410, 412 (Tex.Crim.App.1998).

### b. Factual Sufficiency of the Evidence

There is only one question to be answered by the reviewing court in a factual sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App.2004). A review of the evidence for factual sufficiency is guided by three principles. *Cain v. State*, 958 S.W.2d 404, 407–08 (Tex.Crim. App.1997). First, deference is given to the findings of the fact finder; the evidence will not be reweighed. *Id.* at 407. Second, a finding of factual insufficiency must be supported by a detailed explanation since the fact finder can accept witness testimony or reject it. *Id.* However, the existence of contrary evidence is not enough to support a finding of factual insufficiency. *See Goodman v. State*, 66 S.W.3d 283, 287 (Tex.Crim.App.2001). Third, all of the evidence is viewed in a neutral light. *Zuniga*, 144 S.W.3d at 484; *see Cain*, 958 S.W.2d at 408; *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex.Crim.App. 2002); *Johnson*, 23 S.W.3d at 11; *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996).

The evidence weighed by the fact finder tending to prove the existence of the fact in dispute is compared to the evidence tending to disprove that fact. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App. 1997). This standard is applied to both circumstantial and direct evidence. *King*, 29 S.W.3d at 565; *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex.Crim.App.1999); *Smith v. State*, 895 S.W.2d 449, 452 (Tex. App.-Dallas 1995, pet. ref'd). Reversal for factual insufficiency occurs only when: (1) the evidence is so obviously weak that a conviction is clearly wrong and manifestly unjust; or (2) based upon the contrary evidence, the beyond a reasonable doubt burden of proof could not have been met. *Zuniga*, 144 S.W.3d at 485.

### 2. Elements of the Offenses

 To obtain a conviction for aggravated sexual assault, the State must prove that the appellant (1) intentionally or knowingly (2) caused the penetration of the anus or sexual organ of a child by any means, and (3) the child was younger than fourteen years of age. *See* Tex. Pen.Code Ann. § 22.021(a)(1)(B)(i); *see also Elder v. State*, 132 S.W.3d 20, 24 (Tex.App.-Fort Worth 2004, pet. ref'd), *cert. denied* 544 U.S. 925, 125 S.Ct. 1645, 161 L.Ed.2d 484 (2005). To obtain a conviction for indecency with a child by contact, the State must prove the appellant (1) engaged in sexual contact with a child and (2) the child was younger than seventeen years old and not the appellant's spouse. *See* Tex. Pen.Code Ann. § 21.11(a)(1); *Elder*, 132 S.W.3d at 24. "Sexual contact" is defined to include any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child with the intent to arouse or satisfy the sexual desire of any person. Tex. Pen.Code Ann. § 21.11(c)(1) (Vernon 2003). The testimony of the child victim alone is sufficient to support a conviction for sexual assault. *See* Tex.Code Crim. Proc. Ann. art. 38.07 (Vernon 2005); *Tear v. State*, 74 S.W.3d 555, 560 (Tex.App.-Dallas 2000, pet. ref'd).

### B. Application of the Law to the Facts

 Appellant asserts that the evidence is legally and factually insufficient because there are numerous inconsistencies in the testimony of M.K., her parents, appellant, and his wife. We disagree. The fact finder is the exclusive judge of witness credibility, the determiner of the weight accorded to each witness's testimony, and the reconciler of conflicts in the evidence.

*Jones,* 944 S.W.2d at 647. The trial judge clearly found the testimony to be credible. *See Zuniga,* 144 S.W.3d at 481. Further, contrary evidence is not enough to support a finding of factual insufficiency. *Goodman,* 66 S.W.3d at 287.

Viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Sanders,* 119 S.W.3d at 820; *see also Guevara v. State,* 152. S.W.3d 45, 52 (Tex.Crim.App.2004); *Cooper v. State,* 67 S.W.3d 221, 223 (Tex.Crim.App.2002). Considering all the evidence in a neutral light, the trier of fact was rationally justified in finding guilt beyond a reasonable doubt in each case. *Zuniga,* 144 S.W.3d at 484. We conclude the evidence is legally and factually sufficient to support the jury's verdicts. We decide appellant's first two issues against him.

### III. Ineffective Assistance of Counsel

In his third issue, appellant contends he did not receive effective assistance of counsel at trial.

### A. Applicable Law

■■■ To prevail on a claim of ineffectiveness of counsel at trial, an appellant must establish by a preponderance of the evidence: (1) that trial counsel's representation fell below an objective standard of reasonableness in that counsel made errors so serious that counsel was not functioning as the reasonably effective counsel guaranteed by the state and federal constitutions; and (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v.*

*State,* 726 S.W.2d 53, 55 (Tex.Crim.App. 1986). The appellant must identify the specific acts or omissions that were not the result of professional judgment. *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *Bone v. State,* 77 S.W.3d 828, 836 (Tex. Crim.App.2002). We indulge a strong presumption that defense counsel's conduct falls within the wide range of reasonable, professional assistance—that the challenged actions might be considered sound trial strategy. *Jackson v. State,* 877 S.W.2d 768, 770–71 (Tex.Crim.App.1994). To defeat this presumption, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999). When the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient. *Rylander v. State,* 101 S.W.3d 107, 110–11 (Tex.Crim.App.2003); *Jackson,* 877 S.W.2d at 771.

### B. Application of Law to the Facts

■■■ Appellant asserts counsel was ineffective in not attempting to expressly counter Halstead's testimony that her family-law attorney and the mediator in her custody suit against Danny advised her not to bring up appellant's molestation of M.K. in the mediation. Appellant asserts this testimony was false and that counsel should have subpoenaed Halstead's lawyer and the mediator or requested a continuance to obtain their presence at trial to prove Halstead's testimony was false. The record contains no evidence of counsel's reasons for not following either of these strategies. However, the record shows that counsel cross-examined Halstead about this issue in a manner demonstrating the patent lack of credibility of her

testimony on this issue.[2] With no record of the reasoning behind counsel's actions, we cannot conclude counsel's performance was deficient. *See Rylander*, 101 S.W.3d at 110–11.

Appellant asserts counsel was ineffective because he was unfamiliar with the record of the first trial. Appellant cites to counsel's cross-examination of M.K. where M.K. testified that she had told a non-adult friend about appellant's sexual assaults on her. Counsel told M.K. she had testified in the first trial that she had not told any of her friends about the abuse. M.K. responded that she had testified in the first trial that she told some friends about the abuse; counsel then contradicted M.K. and said, "No, you didn't. No, you didn't, hon." As appellant points out on appeal, M.K. did, in fact, testify during the first trial to telling two friends about the sexual assaults. Without counsel's testimony, however, we cannot determine whether this approach to cross-examination was due to unfamiliarity with the trial record or was strategic. *See Rylander*, 101 S.W.3d at 110–11. Even if this instance of an erroneous statement by counsel about the first trial was due to a misunderstanding of M.K.'s testimony at the first trial, the record of the trial before the court contains numerous other references by counsel to the first trial, which appellant does not challenge, that shows counsel was familiar with the record of the first trial.

Accordingly, appellant's assertion that counsel was unfamiliar with the record of the first trial is not firmly founded in the record.

■ Appellant also asserts counsel was ineffective in not drawing the trial court's attention to various portions of the testimony from the first trial that were beneficial to appellant. Because counsel did not testify, the record contains no evidence of counsel's reasoning in not drawing the court's attention to these matters. Accordingly, the record is not sufficiently developed for us to conclude counsel was ineffective. *See Rylander*, 101 S.W.3d at 110–11.

We conclude appellant's allegations of ineffective assistance lack merit. We decide appellant's third issue against him.

## IV. Motion for New Trial

In his fourth and fifth issues, appellant contends (a) the trial court "erred in refusing to conduct an evidentiary hearing" on appellant's motion for new trial concerning ineffective assistance of counsel and newly discovered evidence, and (b) the trial court erred in denying appellant's motion for new trial.

### A. Hearing on Motion for New Trial

#### 1. Factual Background

. In his motion for new trial, appellant requested "that the Court conduct an evi-

---

2. This part of appellant's cross-examination of Halstead proceeded as follows:

A. I was instructed by my attorney that he didn't want me to bring that up at the time I was trying to seek custody of my daughter, and the mediator. They didn't want to bring that into mediation.

\* \* \*

Q. Let's back up again. You just told me your lawyer—

A. Yes, sir.

Q. —advised you, . . ., not to bring up the allegations of sexual abuse?

A. Yes, sir.

Q. And you are trying to get custody of your daughter away from your ex-husband who lives next to the man who allegedly molested her?

A. Yes, that's true.

During the closing argument at the guilt phase, appellant argued that Halstead's testimony on this subject was a "bombshell" and "bizarre," and his argument implied that this testimony showed that Halstead was not credible.

dentiary hearing concerning newly discovered evidence and concerning ineffective assistance of counsel." On March 17, 2005, the trial court held a hearing on appellant's motion for new trial. At the hearing, the trial court told the parties that it would "receive any evidentiary matters by way of affidavit." The court allowed the parties to submit supplemental affidavits through the next day. Appellant did not object to this procedure.

### 2. Applicable Law

■ The purpose of a hearing on a motion for new trial is to fully develop the issues raised in the motion. *Martinez v. State*, 74 S.W.3d 19, 21 (Tex.Crim.App. 2002). Texas Rule of Appellate Procedure 21.7 governs "the types of evidence allowed at hearing" on a motion for new trial: "The court may receive evidence by affidavit or otherwise." TEX.R.APP. P. 21.7. The rules do not set out how the "hearing" is to be conducted. To preserve error for appellate review, a party must have presented its complaint to the trial court. TEX.R.APP. P. 33.1(a)(1).

### 3. Application of Law to the Facts

■ The record shows appellant received an evidentiary hearing on his motion for new trial with the evidence submitted in affidavit form as permitted by rule 21.7. Appellant did not complain to the trial court that he could not present his evidence in affidavit form, nor did he object in any manner to the trial court's requirement that the evidence be presented in affidavits.

Accordingly, appellant's arguments are unfounded when he claims that the trial court refused to hold an evidentiary hearing on his motion for new trial. To the extent appellant complains on appeal of the trial court's requirement that the evidence be submitted by affidavit, we conclude the complaint was not preserved for appellate review because appellant did not object to that requirement. *See* TEX. R.APP. P. 33.1(a)(1).

### B. Failure to Grant the Motion for New Trial

Appellant contends the trial court erred in not granting his motion for new trial's assertions of ineffective assistance of counsel and newly discovered evidence.

### 1. Standard of Review

■ An appellate court reviews a trial court's denial of a motion for new trial under an abuse of discretion standard. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim.App.2004). We do not substitute our judgment for that of the trial court, but decide whether the trial court's decision was arbitrary or unreasonable. *Id.* We view the evidence in the light most favorable to the trial court's ruling. *Id.* "Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling." *Id.* The motion for new trial must contain the specific ground for new trial asserted on appeal, and any ground not specifically mentioned in the motion itself is not preserved for appellate review. *Cuellar v. State*, 943 S.W.2d 487, 491 (Tex.App.-Corpus Christi 1996, pet. ref'd) (instance of jury misconduct contained in affidavit but not specifically mentioned in motion for new trial was not properly before trial court nor preserved for appellate review) (citing *Trout v. State*, 702 S.W.2d 618, 620 (Tex.Crim. App.1985)).

### 2. Ineffective Assistance of Counsel

In his motion for new trial, appellant listed the following instances of ineffective assistance of counsel as requiring a new trial including that counsel: (1) "failed to

call witnesses that could have offered testimony relevant to Defendant's defenses"; (2) "failed to obtain the file of Defendant's previous counsel before trial and review the documents therein"; (3) failed to request a recess or attempt to investigate whether or not testimony of Halstead's custody-litigation lawyer or the mediator in the custody litigation could refute Halstead's statements "concerning the reporting of the alleged abuse"; and (4) "failed to adequately prepare Defendant's defense to the alleged charges."

 The first ground does not demonstrate ineffective assistance of counsel because it does not identify the specific witnesses appellant could have called, what their testimony would have been, and how that testimony would reasonably have resulted in a different outcome. Likewise, the fourth ground does not demonstrate ineffective assistance because it fails to specify how counsel failed to prepare appellant's defense to the charges. As stated above, an allegation of ineffective assistance must identify a specific act or omission. *Bone*, 77 S.W.3d at 836. These allegations are not sufficiently specific to assert ineffective assistance of counsel.

Concerning the third ground, as we discussed in appellant's third issue, the record does not reveal any evidence of counsel's reasoning for not attempting to undermine Halstead's testimony about her attorney's and the mediator's advice, other than to cross-examine her. Without evidence of counsel's reasons, the trial court could not conclude counsel was deficient. *See Rylander*, 101 S.W.3d at 110–11.

 In the second ground, appellant asserted counsel was ineffective because he "failed to obtain the file of Defendant's previous counsel [Gregory Brewer] before trial and review the documents therein." [3] The evidence submitted by affidavit in the hearing on the motion for new trial does not contain counsel's explanation for why he did not examine Brewer's file. Without counsel's explanation, the trial court could not conclude that counsel's omission was not the result of professional judgment. *See Rylander*, 101 S.W.3d at 110–11.

We conclude the trial court did not err in not granting appellant's motion for new trial for ineffective assistance of counsel based on the grounds specifically asserted in the motion for new trial. Any grounds raised by the affidavits or discussed in appellant's brief that were not specifically asserted in the motion are not preserved for appellate review. *See Cuellar*, 943 S.W.2d at 491. We decide appellant's fourth issue against him.

### 3. Newly Discovered Evidence

 Appellant contends the trial court erred in denying his motion for new trial's assertions of newly discovered evidence. A defendant is entitled to a new trial because of newly discovered evidence when the defendant shows:

---

**3.** Brewer was appellant's attorney in the first trial that resulted in a mistrial. The evidence in support of the motion for rehearing did not contain an affidavit from Brewer or evidence of any statement by Brewer concerning whether trial counsel in the second trial contacted him to obtain or review his file concerning appellant's first trial. The allegation that counsel did not obtain and review the file is supported only by the affidavit of appel-
lant's new appellate attorney, which states, "[Trial counsel] did not obtain the file of Mr. Lee's previous counsel, Gregory Brewer, prior to the retrial of Mr. Lee." The affidavit stated the appellate attorney had reviewed trial counsel's and Brewer's files related to appellant, but the affidavit did not explain how the appellate attorney knew counsel had not obtained Brewer's file. The State did not object to the affidavit.

(1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial;

(2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence;

(3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and

(4) the new evidence is probably true and will probably bring about a different result on another trial.

*Keeter v. State,* 74 S.W.3d 31, 36–37 (Tex. Crim.App.2002). The trial court has discretion to decide whether to grant a new trial based upon newly discovered evidence, and its ruling will not be reversed absent an abuse of discretion. *Id.* at 37. Likewise, the trial judge determines the credibility of the witnesses and whether the new evidence is probably true. *Id.*

The new evidence appellant asserted required a new trial was evidence that Halstead's attorney and the mediator in her custody dispute advised Halstead not to bring up appellant's sexual assault of M.K. during the mediation. Appellant asserts this evidence was newly discovered because this issue was raised for the first time during the trial before the court. Appellant asserts the evidence was admissible to show Halstead "was a liar, [and] would have cast considerable doubt on all her testimony, and upon the testimony of the complaining witness." However, this argument shows the new evidence is merely impeaching, which does not meet the requirement of the third element. As for the last element, whether the evidence is true and will probably bring about a different result on retrial, the trial court, as the trier of fact in the case, was in the best position to determine whether this evidence would have produced a different result.

We conclude the trial court did not abuse its discretion in not granting appellant's motion for new trial for newly discovered evidence. We decide appellant's fifth issue against him.

## V. Conclusion

We affirm the judgments of the trial court.