AFFIRM; Opinion issued October 25, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-11-01306-CR
No. 05-11-01307-CR
No. 05-11-01308-CR

NICHOLAS LACY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 2
Dallas County, Texas
Trial Court Cause Nos. F10-59233-I, F10-59738-I, F10-59739-I

# MEMORANDUM OPINION

Before Justices Morris, Richter, and Murphy
Opinion By Justice Murphy

Nicholas Lacy waived a jury and pleaded no contest to three charges of indecency with a child by sexual contact. After a bench trial, the trial court found the evidence substantiated appellant's guilt and placed him on ten years' community supervision with adjudication deferred in each case. The trial court also assessed three $3000 fines, probated, and in one of the cases, ordered appellant to serve 180 days in the county jail as a condition of his community supervision. In his first three issues, appellant complains the evidence is insufficient to support his no contest pleas and establish his guilt in each case. In three additional issues, appellant asserts each of the trial court's orders deferring adjudication should be modified to reflect there was no plea bargain agreement

reached. We modify each order of deferred adjudication as requested and affirm the orders as modified.

## Background

Appellant was indicted in three cases for indecency with a child by sexual contact. *See* TEX. PENAL CODE ANN. § 21.11(a) (West 2011). The complainant in each case was appellant's step-granddaughter A.R., who was twelve years old at the time of trial. A.R. and her younger sister lived with and were raised by their grandmother, Patricia Lacy, and appellant, whom A.R. called "Papa."

A.R. testified to several instances in which appellant touched her breasts and vagina with his hand. The first instance occurred in January of 2010 at a family get-together. At some point during the evening, A.R. was alone in her bedroom watching television. She testified her bedroom door was open and appellant "walked straight in and touched [her] breast" with his hand. She explained she was sitting in a chair, and appellant was standing behind her, squatting down to reach her. A.R. said appellant used one hand to touch her breast on top of her shirt, and she demonstrated how his hand moved. He stopped when he heard A.R.'s sister get out of the shower. At that point, appellant told A.R. not to tell anyone and left the bedroom. A.R. said she did not tell anyone about what happened because she was scared.

A.R. described three other instances of touching involving her breasts. On one occasion, which occurred in February, A.R. was alone in her bedroom after taking a shower. She was wearing a robe and a pair of underpants. A.R. testified she was sitting down watching television and appellant came in, stood behind her, and "rubbed [her] breast again" with his hand. He touched A.R. on top of her robe and stopped when her sister got home. Another instance occurred in March. A.R. was again alone in her bedroom. She testified appellant touched her breast with his hand. In describing the touching, she said appellant "would stop sometimes and he would let go and stop."

Appellant touched her breast another time when the family was in Waco for a funeral. A.R. testified she was getting her clothes out of the car and appellant came up to her and "was rubbing on [her] breast again" with his hand on top of her clothes. Although they were outside in the parking lot of a motel, no one saw what happened. A.R. testified that after both the February and Waco incidents, appellant told her not to tell anyone about the touching.

A.R. also testified to two instances in which appellant touched her vagina. On the first occasion, A.R. was in the kitchen washing dishes. She was wearing her new basketball shorts. A.R. testified they were both standing and appellant touched her under her shorts but on top of her underwear. A.R. said his hand "moved" and that appellant was making "a breathing noise." Appellant stopped because A.R. ran to her room. Appellant told her not to tell her grandmother or her sister, adding "you know [your sister] talks too much."

The second time he touched her vagina was in July of 2010, which she remembered because it was her "birth month." Appellant had given A.R. permission to go to the swimming pool with her sister and cousin. After A.R. put on her bathing suit, appellant told her to "[c]ome here" to his bedroom. A.R. went to him, and "then he started to touch [her] vagina" with his hand moving over her clothes. Appellant stopped when Patricia, who was waiting for the kids in the car, honked the horn. Appellant told her not to tell her grandmother or her cousin.

Patricia found out about everything in August of 2010 after something "captured [her] attention." Patricia testified that she was in her bedroom one night playing a computer game. A.R. and her sister were supposed to be in the kitchen washing dishes, but she heard A.R.'s sister go to the shower. Patricia then heard appellant's voice in a "monotone type" along with low noises. She also heard A.R. say something, which she could not make out. When Patricia left her bedroom, she saw that appellant had A.R. "cornered in the hall" with "his leg up against her crotch."

Patricia told appellant to get away from A.R., who went into her bedroom. Patricia followed and asked A.R. "had papa been touching her." A.R. was trembling and crying. Patricia was not sure whether A.R. denied anything happening the first few times Patricia asked. She remembered, however, that when she asked about any touching, A.R. "acted like she was . . . relieved that [Patricia] saw it." A.R. admitted that when Patricia first asked if appellant had been touching her, she told her "no"; she also denied it three or four times before finally admitting that something happened with appellant. A.R. said she denied it happening at first because appellant was scaring her.

Patricia recounted that when she confronted appellant, he told her he "didn't mean to" and explained "he was just trying to show [A.R.] what little boys were gonna do to her." Appellant also apologized to A.R. and told her he did not mean to hurt her; he repeated that he wanted to "teach" her. A.R. testified this was the only time appellant ever said anything to her about wanting to teach her about what boys might do to her. A.R. also heard appellant ask Patricia why she would believe A.R. over him. After the confrontation, Patricia asked appellant to leave the house, which he did. Patricia called her cousin and then called the police.

Patricia never saw any touching or behavior by appellant that made her suspicious. And although Patricia told the girls about inappropriate touching and made it clear they could talk to her if anything was going on, A.R. never told her anything about appellant's touching. Patricia described A.R. as quiet and "kind of passive." She also testified that A.R. may get upset with some of appellant's rules and tear up or pout but added "[y]ou hardly ever see [A.R.] get angry." And if A.R. got angry, she "pop[ped] right out of it and within five minutes she [was] over it."

Appellant's daughter, Decia Lacy, also testified. She was eleven or twelve years old when appellant first taught her about good and bad touches. Decia explained that when appellant talked

-4-

to her about inappropriate touching, he would show her with his hands. She described it as "nothing graphic" and recounted that appellant would just place his hand on her chest and tell her that if "someone touches you here you need to make sure to let me know." There was no "cupping" of her breast. Decia testified she understood what appellant was teaching her after just one time and that her mother was present. She claimed she never felt violated or exploited and that "it would have been okay" with her if appellant touched her vagina because she would feel like he was teaching her how no one should touch her.

Appellant denied each of A.R.'s allegations but admitted to touching A.R. two times above her breast when he was "teaching her." Appellant testified he was trying to show A.R. a "hugging thing," how boys might run up behind her and grab her. He explained how he demonstrated this for A.R. with Patricia, and he claimed Patricia asked him to demonstrate on A.R. He testified that he did not touch A.R.'s breast during the demonstration, but he told A.R. that when the boys grab you, "they'll be down lower at your breasts" or below her waist. He said there was nothing sexual about the demonstration.

Appellant also emphasized that due to his health, he had been unable to have sexual relations with Patricia for many years. And although he had been approved to take Viagra, he had no sexual desire and did not even think about sex. Appellant testified A.R. lied about the touching because she was "starving for attention and love." He claimed that when Patricia saw them in the hallway, A.R. was "politicking and going on" about wanting a cell phone. He also suggested he felt "this came about" because he told Patricia two or three days earlier that he was leaving Patricia.

## Sufficiency of the Evidence

Appellant argues in his first three issues that the evidence is insufficient to substantiate his guilt in each case. Ordinarily, in conducting a sufficiency review, we examine all the evidence in

the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). But the traditional sufficiency standard of review does not apply to felony cases when, as here, the defendant knowingly, intelligently, and voluntarily enters a plea of no contest. *See O'Brien v. State*, 154 S.W.3d 908, 910 (Tex. App.—Dallas 2005, no pet.); *Young v. State*, 993 S.W.2d 390, 391 (Tex. App.—Eastland 1999, no pet.); *cf.* TEX. CODE CRIM. PROC. ANN. art. 27.02(5) (West 2006) (legal effect of no contest plea is same as that of guilty plea).

When a defendant pleads no contest, the State must introduce sufficient evidence to support the plea and establish the defendant's guilt. *See* TEX. CODE CRIM. PROC. ANN. art. 1.15 (West 2005). There is no requirement that the evidence prove the defendant's guilt beyond a reasonable doubt. *See McGill v. State*, 200 S.W.3d 325, 330 (Tex. App.—Dallas 2006, no pet.); *Tijerina v. State*, 264 S.W.3d 320, 323 (Tex. App.—San Antonio 2008, pet. ref'd) (mem. op.). We will affirm the trial court's judgment if the evidence embraces every essential element of the offense charged and is sufficient to establish guilt and support the plea. *See* TEX. CODE CRIM. PROC. ANN. art. 1.15; *Stone v. State*, 919 S.W.2d 424, 427 (Tex. Crim. App. 1996); *Wright v. State*, 930 S.W.2d 131, 132 (Tex. App.—Dallas 1996, no pet.).

Based on the three indictments, to establish appellant's guilt in each case and support his pleas, the State had to prove appellant intentionally and knowingly engaged in sexual contact with A.R., a child younger than seventeen, by touching her (1) breast on two occasions and (2) genitals on one occasion with the intent to arouse and gratify his sexual desire. *See* TEX. PENAL CODE ANN. § 21.11(a)(1). "Sexual contact" includes "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child." *Id.* § 21.11(c)(1). The State could meet its burden through the testimony of the child complainant alone. *See* TEX. CODE CRIM.

PROC. ANN. art. 38.07(a) (West Supp. 2011); *Lee v. State*, 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd).

Here, the trial court heard A.R.'s testimony describing how appellant touched her breast and vagina multiple times. A.R. specifically testified to four instances when appellant touched or rubbed her breast with his hand over her clothes and two instances when appellant touched her vagina with his hand: one time under her shorts but on top of her underwear and another time when he touched her vagina over her swimsuit. She also described a breathing noise appellant made when he touched her vagina on one of those occasions. This testimony alone was sufficient to establish appellant committed the offenses. *See Lee*, 186 S.W.3d at 655; *Stone*, 919 S.W.2d at 427.

Appellant argues, however, the evidence is insufficient to show he committed the offenses because A.R.'s testimony related to the alleged acts of touching was not credible and both she and her grandmother had a motive to accuse him falsely. He also suggests that any touching that occurred was consistent with his family's method of teaching children how to avoid sexual abuse. But it was the trial court's role to judge the credibility of witnesses and to reconcile conflicts, contradictions, and inconsistencies in the evidence. *See Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Although A.R. testified she would get upset if appellant would not give her permission to watch television or use the laptop, she also stated she would "get over it." A.R. further testified that she was not upset about not getting a cell phone on the day Patricia called the police. Patricia testified that even though A.R. may get upset with appellant's rules, "you hardly ever see [A.R.] angry" and she "pops right out it" within minutes. Both A.R. and Patricia testified that A.R. never told Patricia about appellant's actions. Rather, Patricia called the police because she saw appellant with his leg against A.R.'s crotch. Patricia specifically remembered A.R. acting relieved when Patricia "saw something." The trial court was entitled to resolve evidentiary weight issues and

credibility determinations in the State's favor and to reject appellant's evidence.

Appellant further complains the evidence is insufficient to establish the element of intent to arouse or gratify his sexual desire. He asserts that because his medical condition renders him physically unable to have sexual urges, he did not have the requisite sexual intent to commit the offenses. The trial court heard testimony about appellant's health and how appellant was "down for the count" sexually. But appellant admitted to being prescribed Viagra and using Viagra in 2010. The trial court also heard testimony there was nothing sexual about appellant's method of "teaching" about sexual abuse. Decia testified everyone in her family taught about inappropriate touching the same way and that she understood the difference between a good and bad touch after one time when her mother was present. Yet A.R. testified to multiple instances when appellant touched not only her breast but also her vagina when A.R. was alone. According to A.R., appellant never said anything to her about teaching her until after he was confronted by Patricia. Rather, he told her not to tell anyone. Intent to arouse or gratify the sexual desire of a person may be inferred from conduct, remarks, and surrounding circumstances. *See Couchman v. State*, 3 S.W.3d 155, 163 (Tex. App.—Fort Worth 1999, pet. ref'd). The testimony is sufficient to prove the intent element of each offense.

Having reviewed all the evidence, we conclude it embraces all the essential elements of each offense charged and is sufficient to establish appellant's guilt in each case. *See Stone*, 919 S.W.2d at 427. We overrule appellant's first, second, and third issues.

## Modification of the Judgments

In his remaining three issues, appellant asks this Court to modify the trial court's orders of deferred adjudication to show there was no plea bargain agreement reached in each case. The State agrees each order should be modified in the manner appellant requests. On each order of deferred

adjudication, the line item "Terms of Plea Bargain" reads "10 YRS DEFERRED; FINE $3000." But the reporter's record shows the trial court placed appellant on community supervision, assessed the fines, and, after hearing the evidence in a bench trial, ordered appellant to serve additional time in the county jail. The record also shows the trial court acknowledged appellant's rejection of the State's offer of five years in prison. This Court has the power to correct a clerical error on a judgment to reflect what occurred in the trial court as shown by the record. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). We therefore sustain appellant's fourth, fifth, and sixth issues and modify the order of deferred adjudication in each case to show there was no plea bargain agreement.

We affirm the trial court's order of deferred adjudication in each case as modified.

_____
MARY MURPHY
JUSTICE

111306F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

NICHOLAS LACY, Appellant

No. 05-11-01306-CR     V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court No. 2 of Dallas County, Texas. (Tr.Ct.No. F10-59233-I).
Opinion delivered by Justice Murphy, Justices Morris and Richter participating.

Based on the Court's opinion of this date, the trial court's Order of Deferred Adjudication is **MODIFIED** as follows:

The "Terms of Plea Bargain" is modified to read: "N/A."

As modified, the trial court's order is **AFFIRMED**.

Judgment entered October 25, 2012.

_____
MARY MURPHY
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NICHOLAS LACY, Appellant

No. 05-11-01307-CR          V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court No. 2 of Dallas County, Texas. (Tr.Ct.No. F10-59738-I).
Opinion delivered by Justice Murphy, Justices Morris and Richter participating.

Based on the Court's opinion of this date, the trial court's Order of Deferred Adjudication is **MODIFIED** as follows:

The "Terms of Plea Bargain" is modified to read: "N/A."

As modified, the trial court's order is **AFFIRMED**.

Judgment entered October 25, 2012.

_____
MARY MURPHY
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NICHOLAS LACY, Appellant

No. 05-11-01308-CR          V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court No. 2 of Dallas County, Texas. (Tr.Ct.No. F10-59739-I).
Opinion delivered by Justice Murphy, Justices Morris and Richter participating.

Based on the Court's opinion of this date, the trial court's Order of Deferred Adjudication is **MODIFIED** as follows:

The "Terms of Plea Bargain" is modified to read: "N/A."

As modified, the trial court's order is **AFFIRMED.**

Judgment entered October 25, 2012.

_____
MARY MURPHY
JUSTICE