**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00087-CR**
**NO. 09-14-00088-CR**

_____

**JACOB PROVOST, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 163rd District Court**
**Orange County, Texas**
**Trial Cause Nos. B130431-R, B130434-R**

**MEMORANDUM OPINION**

Jacob Provost[1] appeals his two convictions for aggravated sexual assault. In Provost's sole issue on appeal, he argues the evidence is legally insufficient to support the finding of guilt for each conviction. We affirm.

_____

[1] There is evidence in the record that Jacob Provost is also known as Jacob Provost Peeples.

1

## Sufficiency of the Evidence

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)) (determining that the *Jackson* standard "is the only standard that a reviewing court should apply" when examining the sufficiency of evidence); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). In a legal-sufficiency review, we are "required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks*, 323 S.W.3d at 899; *see also Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). When faced with conflicting evidence, we presume the finder of fact resolved any conflicts in the testimony in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). If any rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm the judgment. *See McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). In a bench trial, the trial court "is the sole judge of the credibility of the witnesses and may accept or reject any part or all of the

testimony given by State or defense witnesses." *Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. [Panel Op.]1978).

In each case, the State charged Provost with aggravated sexual assault. The State alleged that on or about August 28, 2010 and September 11, 2010, Provost "intentionally and knowingly cause[d] the penetration of the sexual organ of [A.B.], a child who was then and there younger than 14 years of age and not the spouse of [Provost], by his penis[.]" A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means[.] Tex. Penal Code Ann. § 22.021(a)(1)(B)(i) (West Supp. 2014).[2]

The record reflects that A.B. is Provost's daughter.[3] A.B. testified that after her parents divorced, she visited Provost regularly and, at times, spent the night. A.B. enjoyed a good relationship with Provost and was a typical "daddy's little girl." A.B. recalled that her relationship changed with Provost when she was

---

[2] Although the statute has been amended since the offenses in question were committed, the changes are not material to the issues on appeal; accordingly, we cite the current version of the statute for convenience.

[3] To protect the privacy of the child relevant to Provost's case, we identify her by using initials that disguise her identity. *See* Tex. Const. art. 1, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

thirteen years old. According to A.B., three incidents occurred in August or September of 2010 that changed the nature of her relationship with Provost.

The first incident occurred one night while A.B. was spending the night with Provost. A.B. testified that she was asleep on the couch when she felt someone close to her face. When A.B. opened her eyes, Provost gave her a "hard kiss" on the lips. The next day Provost acted as if nothing had happened. A.B. recalled that she was in shock from the event and did not know what to do, but because she loved her father, she did not say anything to anyone. Although it was uncomfortable for her, she continued to go over to Provost's home.

A.B. testified that the second incident also occurred when she had gone over to Provost's home for an overnight visit. A.B. explained that she was halfway asleep on the couch when Provost asked her to come upstairs with him. She recalled that she entered Provost's bedroom to see what he wanted. According to A.B., when she entered the room, Provost forced himself on her. A.B. described in detail how Provost sexually assaulted her. She testified that Provost "pulled [her] shorts to the side" and "forced his penis inside of [her]." A.B. testified that Provost told her not to tell anyone what had happened. A.B. testified that she continued to go back to Provost's home because she wanted to be there for the young child that resided in the home, whom she considered to be like her sister.

4

The third incident also occurred in Provost's home. A.B. testified that she had finished using the bathroom upstairs and had started to go downstairs when Provost dragged her into his room and sexually assaulted her. A.B. testified in detail regarding the circumstances of the second sexual assault. She testified that Provost removed her shorts and "forc[ed] his penis into [her]." According to A.B., Provost warned her not to tell anyone what he had done or Provost would hurt her. A.B. recalled that Provost seemed less interested in her after she had a breast reduction at age fourteen, against Provost's wishes.

A.B. testified that Provost's girlfriend and the girlfriend's two- to three-year-old daughter resided in the home with him. However, A.B. explained that the girlfriend was not home when Provost kissed her or when he sexually assaulted her, and the young child was asleep in her bedroom during the incidents.

A.B. testified that after the sexual assaults occurred, she ran away from her mother's home at least twice and that Provost found her in Silsbee on one of these occasions and picked her up. When Provost retrieved A.B., he was not alone, and A.B. went willingly with him. A.B. also recalled that before Provost sexually assaulted her, she had a "really good" G.P.A. but that her G.P.A. suffered after the assaults.

A.B.'s mother testified that she met Provost when she was approximately thirteen years old. Provost is five years older than A.B.'s mother. A.B.'s mother started dating Provost, became pregnant, and had A.B. when she was fourteen years old. A.B.'s mother corroborated A.B.'s testimony that A.B. and Provost had enjoyed a good relationship for a number of years. A.B.'s mother recalled a major change started to develop in A.B.'s personality before she turned fourteen years old. She testified that A.B. started sneaking out, stealing cars, and was unable to pass her classes in school. According to A.B.'s mother, this behavior reflected a complete change in her daughter. She testified that A.B. started seeing a therapist and taking medication, but continued to withdraw.

A.B.'s stepfather corroborated her mother's testimony regarding A.B.'s change in demeanor. A.B.'s stepfather had a good relationship with A.B. and was concerned for her. A.B.'s stepfather started a conversation with A.B. in January 2013, which ultimately concluded in A.B's outcry of sexual abuse. A.B.'s stepfather testified regarding what A.B. had told him had happened, and A.B.'s outcry to her stepfather was consistent with her testimony at trial.

Provost's stepmother testified that she saw A.B. and Provost interact with one another positively at a July 4th gathering sometime in 2011 or 2012. She testified that although Provost is not a good provider for his family, he is a good

6

father. Provost's stepmother admitted that she does not see A.B. very often. Provost's aunt also testified. She testified that she has never seen Provost act inappropriately around her children. She testified that she understood A.B. remained in contact with Provost, even throughout 2013.

Provost denied sexually abusing A.B. Provost testified that he does not know why A.B. would make these false allegations against him, but speculated that A.B. felt that he neglected her. He contends that his girlfriend was present during the times A.B. alleges Provost sexually assaulted her. We note that the record reflects that the girlfriend Provost references in his testimony appeared to testify at Provost's trial, but ultimately decided she did not want to testify on his behalf. Provost's counsel stated on the record that Provost felt like it would not be in his best interest to subpoena the girlfriend to testify.

On appeal, Provost contends that the evidence is insufficient because A.B.'s testimony is suspect due to her being "a very troubled child[.]" For example, he argues that her testimony should be viewed with suspicion because she ran away from her mother's house and gave her mother grief. He also contends that A.B. willingly goes with him when he comes to get her, which proves that she is not afraid of him. The credibility of A.B.'s testimony, however, was a factor for the

7

trial court to consider in weighing the evidence, and we defer to the trial court's resolution of those issues.

In sexual abuse cases involving a child, the testimony of the child victim alone is sufficient to support a conviction. *See Garcia v. State,* 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Lee v. State,* 186 S.W.3d 649, 655 (Tex. App.–Dallas 2006, pet. ref'd); *West v. State,* 121 S.W.3d 95, 111 (Tex. App.–Fort Worth 2003, pet. ref'd). Additionally, the judge, as the sole judge of the credibility of the witnesses, is free to accept or reject some, all, or none of the evidence presented by either side at trial. *See Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). We conclude a rational trial court could have found the essential elements of the offense beyond a reasonable doubt. *See Brooks,* 323 S.W.3d at 912.

Having overruled Provost's only issue on appeal, we affirm the judgments of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on March 10, 2015
Opinion Delivered August 12, 2015
Do not publish
Before Kreger, Horton, and Johnson, JJ.