**Affirmed; Opinion Filed January 26, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-16-01426-CR
_____

### RICHARD THOMAS ALFANO, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-83426-2015**

## MEMORANDUM OPINION

Before Justices Bridges, Myers, and Schenck
Opinion by Justice Myers

A jury convicted appellant Richard Thomas Alfano of one count of continuous sexual abuse of a child under the age of fourteen and three counts of indecency with a child by contact, and the trial court sentenced appellant to 30 years in prison for continuous sexual abuse of a child and 20 years in prison for each of the indecency counts. In one issue, appellant contends he received ineffective assistance of counsel. We affirm.

### DISCUSSION

In his issue, appellant argues he received ineffective assistance of counsel because trial counsel failed to object to evidence that showed a breathalyzer test was administered to appellant during an interrogation. More specifically, there was a point during an interview with a McKinney police detective when the detective asked a patrol officer to come into the interview room and administer a breathalyzer test to appellant. Appellant contends trial counsel should

have objected to this portion of the interview being seen by the jury.

To prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006).

Appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697. Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). In the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal. *Lopez*, 343 S.W.3d at 143. However, the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law and no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of counsel's subjective reasoning. *Id*.

In this case, appellant did not file a motion for new trial and the record is silent regarding defense counsel's reasons for his actions. The record does show that the victim, M.A., accused

his father, appellant, of molesting him from the time he was in kindergarten until he was in the eighth grade, or approximately fourteen years of age. M.A testified that appellant bathed him, but only when M.A.'s mother was not around, and that he would spend a lot of time washing M.A.'s genitals, "seductively" going over M.A.'s penis and "messing" and "playing" with it. Appellant also applied a cream to M.A.'s genitals, telling him this was because M.A. used to scratch himself as an infant. Appellant would rub the cream over M.A's genitals and stroke M.A's penis. Appellant sometimes became sexually aroused as he did these things. Appellant would also have M.A. lay down with him in what appellant called "teddy bear time," with M.A. laying against the front of appellant's body and appellant rubbing against him. M.A would have to stay there as long as appellant wanted, and appellant would pull him back if he started to move away. Appellant sometimes became sexually aroused while doing this. In addition, appellant played a game with M.A. where he would put one of M.A.'s stuffed animals on top of his clothes or inside his pants, telling M.A. he had to reach for the stuffed animal if he wanted it back. When M.A. reached for the animal, appellant would grab M.A.'s hand and make him touch appellant's penis. Appellant was sometimes sexually aroused while playing this game.

M.A. eventually disclosed the abuse to Joy Flavill, a special education teacher and counselor specializing in domestic violence and sexual abuse and assault. M.A. met Flavill in 2014 when they were both working for a political campaign. After knowing each other for about four or five months, M.A disclosed that he had been abused by appellant over a period of years, and M.A. provided details regarding the abuse. Flavill contacted the police.

Detective Natalie Irwin of the McKinney police department began an investigation. A forensic interview of M.A. was done, and Irwin interviewed appellant on more than one occasion. Irwin testified that she talked to appellant on the telephone on August 2, 2014, in a call that was initiated by appellant. The call was not recorded. She interviewed him later that

day at the children's advocacy center when appellant showed up unannounced, and this interview was recorded but not admitted into evidence.

Detective Irwin first scheduled an interview with appellant for August 20, 2014, but was unable to conduct the interview on that date because appellant arrived late. The interview was rescheduled for the following day at 10:30 a.m., and when that interview began, appellant informed Irwin he had ADHD (Attention Deficit Hyperactivity Disorder) and needed his medication in order to focus. As a result, the interview was rescheduled for 1:00 p.m. that day, August 21, 2014. This interview—video recorded, admitted into evidence, and played for the jury during Detective Irwin's testimony—lasted for nearly three hours. The detective also spoke to appellant at his apartment on August 29, 2014, after talking to him on the telephone earlier that day. Appellant called Irwin on November 21, 2014, and she interviewed him again on July 13, 2015—an interview that was likewise recorded, admitted into evidence, and played for the jury during Irwin's testimony.

At one hour and eighteen minutes into the August 21st interview, Irwin stopped the interview and had a patrol officer come into the interview room to administer a breathalyzer test to appellant. After administering the test, the officer told appellant he was at ".04" and that he had alcohol in his system. The detective told appellant that she smelled what she thought was alcohol on appellant and that she wanted to make sure he was "sober and well." The detective asked appellant if he had had anything to drink before coming to the interview, and appellant said he drank two glasses of wine at 4 o'clock in the morning before going to sleep. The detective also asked appellant what medication he had taken that day, and appellant said he had taken Adderall, Xanax, and Effexor.

Appellant made various admissions during his multiple interviews with Detective Irwin, as shown by her testimony and the record. Appellant told the detective during one interview that

–4–

he had never been alone with M.A, which Irwin found odd. Appellant admitted to bathing his son up to the age of fourteen, but said M.A. had not yet reached puberty. Appellant also said during later interviews, according to Irwin's testimony, that he lied about or embellished some things he told the detective because he was trying to get "empathy."

The defense did not object when the portion of the August 21, 2014 interview that showed the breathalyzer test being administered to appellant was played for the jury. On cross-examination, the defense brought out the fact that Irwin ordered the breathalyzer test because she became suspicious appellant might have been intoxicated, either because of alcohol or some type of prescription medication. The detective testified that she thought she smelled alcohol on appellant and had him blow into the breathalyzer. She said appellant was not very focused and described his behavior as "very unusual." The defense also used Irwin's testimony to raise appellant's mental health history, which included a commitment to a mental health facility, and his use of prescription pain medication such as hydrocodone.

During closing arguments, defense counsel advanced two theories. First, that appellant's "strange" behavior showed he did not have the requisite intent when he touched M.A. As counsel stated, "Are they strange enough folks that this could have been going on, that's just their way? You know, different people behave real differently, but it doesn't necessarily have to be with intent to arouse or gratify sexual desires." Second, counsel emphasized that appellant's statements should be discounted because something was "not right" during the interview. Defense counsel argued that appellant "would have ended up implicating himself in the Kennedy assassination if she started down that road," that appellant "would have admitted to anything if she went long enough," and that "[t]here's something not right there. You watch those tapes."

M.A.'s testimony alone is sufficient to support the conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.]

2014, no pet.); *Lee v. State*, 186 S.W.3d 649, 656 (Tex. App.—Dallas 2006, pet. ref'd); *Zapuche-Landaverde v. State*, No. 05–16–00685–CR, 2017 WL 5559571, at *6 (Tex. App.—Dallas Nov. 16, 2017, no pet.) (mem. op., not designated for publication).  Given the evidence in this case, which included damaging admissions from appellant, defense counsel could have concluded that a reasonable course of action was to draw the jury's attention to the breathalyzer test and argue appellant was "not right" during the interview, either because of alcohol or prescription medication.  Based on this record, we cannot say trial counsel's performance was "so outrageous that no competent attorney would have engaged in it."  *Goodspeed*, 187 S.W.3d at 392.  We overrule appellant's issue.

We affirm the trial court's judgment.


/Lana Myers/
LANA MYERS
JUSTICE


Do Not Publish
TEX. R. APP. 47
161426F.U05

–6–



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

RICHARD THOMAS ALFANO, Appellant

No. 05-16-01426-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416-83426-2015.
Opinion delivered by Justice Myers. Justices Bridges and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of January, 2018.