In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00223-CR
_____

MIGUEL ANGEL CANO, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 13-03-02650 CR

**MEMORANDUM OPINION**

Miguel Angel Cano appeals his conviction for the offense of continuous sexual abuse of a child. Cano argues his conviction is not supported by sufficient evidence and that the trial court erred when, on its own motion, it dismissed a juror at the opening of trial. We affirm the trial court's judgment.

## I. Background

Cano was charged by indictment with the felony offense of "continuous sexual abuse of [a] child[,]" to which he pleaded "not guilty[.]" The jury found

1

Cano guilty of continuous sexual abuse of a child and assessed punishment at seventy-five years of confinement and a $10,000 fine. Cano filed a motion for new trial on grounds that, among other things, the evidence is legally and factually insufficient to support the verdict. Cano's motion for new trial was denied by operation of law.[1] Cano now appeals his conviction.

## II. Sufficiency of the Evidence

In his first issue, Cano asserts the evidence was legally insufficient to support his conviction for continuous sexual abuse of a child. In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)) (determining that *Jackson* standard "is the only standard that a reviewing court should apply" when examining sufficiency of evidence); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether the appellate court believes the State's evidence or believes that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). Rather, the jury is the ultimate

---

[1] Tex. R. App. P. 21.8(c).

authority on the credibility of witnesses and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 894-95; *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999); *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). We give deference to the jury's responsibility to "'fairly resolve conflicts in [the] testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper*, 214 S.W.3d at 13 (quoting *Jackson*, 443 U.S. at 318-19). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prosecution. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *See McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). "Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally[;] . . . . we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster v. State*, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009) (footnotes omitted).

The indictment alleged that Cano committed the offense of continuous sexual abuse of a child, L.L., who was younger than fourteen years of age. A person commits the offense of continuous sexual abuse of a child if:

3

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

Tex. Penal Code Ann. § 21.02(b) (West Supp. 2014). An "act of sexual abuse" is an act that violates one or more laws, including indecency with a child under section 21.11(a)(1) and aggravated sexual assault under section 22.021. *Id*. § 21.02(c)(2), (4). A person commits the offense of indecency with a child if the person engages in sexual contact with the child or causes the child to engage in sexual contact, or with intent to arouse or gratify the sexual desire of any person, exposes his anus or any part of his genitals knowing the child is present or causes the child to expose the child's anus or any part of her genitals. *Id*. § 21.11(a) (West 2011). A person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child under the age of fourteen by any means. *Id*. § 22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2014).

In this case, the indictment alleged that Cano committed two or more acts of sexual abuse against L.L., including: aggravated sexual assault of a child by penetrating the sexual organ of the child with his finger and indecency with a child by contact, by touching the sexual organ of the child with his finger. The

4

complaining witness, L.L., was ten years old at the time of trial. L.L. testified that Cano touched her in the "middle part" of her body, which she described as the part used for urination. L.L. provided detailed testimony regarding Cano's inappropriate touching and ultimately his digital penetration of her vagina. L.L. testified that Cano inappropriately touched her approximately ten times. She recalled that she was six or seven years old the first time he touched her inappropriately. She testified that Cano first touched her inappropriately before July of 2008 when Cano's daughter was born. She recalled that he also inappropriately touched her after Cano's daughter had been born.

L.L. testified in detail about a specific incident where Cano had sexually abused her at L.L.'s birthday party, which was held at Cano's house. According to L.L.'s mother, the party was for L.L.'s eighth birthday and was held in May 2010. L.L. described in detail another time when Cano digitally penetrated her vagina while she was attending a birthday party at Cano's house for Cano's daughter. Cano testified that his daughter's birthday party was in July 2010. L.L. testified that because her vaginal area started hurting, she eventually told her mother what Cano had been doing to her.

Mother testified that on May 2, 2011, L.L. came into her bedroom at two o'clock in the morning and told her that her private parts were hurting. Mother testified that L.L. was crying when she entered the room. Mother testified that she

5

examined L.L.'s private parts and discovered they were "terribly inflamed." Mother recalled that L.L. told her that night that Cano had been touching her.

Karen Trevino was employed by Children's Safe Harbor as a Sexual Assault Nurse Examiner (SANE) when she examined L.L. on May 2, 2011. L.L. was eight years old at the time of the examination. According to Trevino, L.L. described what had happened to her and L.L.'s description caused Trevino to believe that L.L. had been digitally penetrated. L.L. told Trevino substantial details and told her that the touching had hurt her. Trevino testified that the findings of her examination were consistent with the types of sexual acts described by L.L. given the time lapse since the last reported incident of abuse.

Susana Martinez, a staff counselor at Children's Safe Harbor testified that L.L. told her that she had come to see Martinez because "her "baby-sitter's husband had touched her; had done inappropriate things to her in a sexual manner." Martinez testified that L.L. described psychological issues abnormal for a nine-year-old child, including: difficulty falling asleep and staying asleep, nightmares, fears of being alone, worry, poor concentration, fear of the alleged perpetrator, loss of interest in activities she once liked doing, irritability, increased anger, and enuresis. According to Martinez, these symptoms are consistent with sexual abuse trauma such as the type of abuse L.L. described to Martinez.

6

Elias Perez, an investigator at the Conroe Police Department, testified that he observed L.L.'s interview at Safe Harbor and after observing the interview, he believed an offense had occurred. Perez testified that he contacted Cano and asked if he would come to the police station to speak to him about a report that a child had been harmed at Cano's home and that Cano was a suspect. Perez testified that Cano initially denied touching L.L. inappropriately, but as the interview continued Cano's story changed. Perez testified:

> From the beginning, of course, it was flat out denial, to 'I did touch the head or the chest.' And then he would go on to, 'Okay, I may have pulled on the pants.' And then the -- at one point, it was he does recall when she was in the bathroom. It was more disciplinary purposes and not sexual reasons that he touched the vagina.
>
> . . . .
>
> [Cano] said he was going to go to the restroom and [L.L.] was in the -- she had just got through using the restroom and the door was left open. And it was at that point that [Cano] said, 'Well' -- he yelled at her and said, 'Why did you leave that door open? For that reason, I am going to' -- you know, 'I have to discipline you.'
>
> And at first, [Cano] said he patted her on the stomach. And -- but -- and then I advised him, 'She didn't say you touched her. She said you touched her on the vagina.'
>
> [Cano] said, 'Well, you are right. I did pat her and hit her on the vagina several times and only for disciplinary reasons and not for sexual reasons.'

Perez testified that Cano's body language during the interview suggested that Cano started to accept responsibility for his actions. Perez testified that Cano said, "'Yes, I know where I erred.'"

Perez videotaped his interview of Cano. The videotape was admitted into evidence and played for the jury. On the videotape, Cano described the incident in the bathroom. Cano stated that L.L. was in the bathroom sitting on the toilet and he went inside the bathroom and closed the door. Cano stated,

> It's because I haven't touched her but only that time that I tell you, the time in the bathroom when I told her to pull up her pants, it's the only time and from that time I have not touched her more, no, no and I tell you with all my heart that no.

When asked where he touched L.L., Cano stated, that he "told her put your panties on, shame on you and [he] touched her there." When Cano was asked if "there" indicated L.L.'s "private area[,]" Cano responded, "Yes, yes so she would feel ashamed, yes, yes." In Cano's written statement, he indicates that the bathroom door was closed and he had to open it. But later in the same statement, Cano questions why L.L. would not close the bathroom door when she went to use the facilities.

During the interview, Cano also stated that one day while he was playing with his daughter and L.L., his daughter pulled L.L.'s pants down, so he pulled L.L.'s pants back up. He also described another incident where the two girls were

8

running and he put his hand out to stop L.L. During the interview, Cano stated that he touched L.L. "over the pants," but indicated he did not know if he touched her on the stomach or lower. Perez testified that Cano's story was not consistent.

Cano testified on his own behalf and denied ever sexually assaulting L.L. Cano specifically denied touching L.L.'s vagina and denied admitting to Officer Perez that he had touched L.L.'s vagina. After being presented with his written statement, Cano again denied touching L.L.'s "private part" but admitted to hitting her, but not on her "private part".

Cano testified that L.L. had celebrated her birthday at his house and it was on that day that L.L. told Cano's wife that Cano had been touching L.L. inappropriately. Cano testified that L.L. told his wife about the abuse after the bathroom incident he referenced in his statement. Cano testified that the door to the restroom was closed, but unlocked. He testified that when he entered the restroom, he observed L.L. standing up, having finished using the restroom. Cano first denied closing the door behind him upon entry. After being presented with his statement to Officer Perez wherein he stated he closed the door behind him, Cano testified that he closed the door but did not lock it. Cano maintained that he would never discipline L.L. because she is not his daughter. When asked if he would ever "hit her or touch her in any way in a form of discipline[,]" Cano responded, "No. No. Of course not."

9

A number of defense witnesses testified that Cano was a hard worker, meant to suggest by implication that because Cano worked so much he was rarely home and therefore, had no opportunity to sexually abuse L.L. However, Cano testified he was present at times in the evening when L.L.'s mother arrived to pick up her children. Cano also testified that sometimes L.L.'s family would stay late and have dinner at his house. Moreover, as indicated above, Cano described a few incidents in which he admittedly encountered L.L. One other defense witness also testified that Cano was sometimes present in the afternoon when she arrived at the Cano house after work to pick up her children.

Rafaela Raudales testified on behalf of Cano. She testified that she was previously married to a member of L.L.'s family. Raudales testified that about eight months before trial, she had a conversation with L.L. wherein L.L. denied that Cano had ever touched her. On cross-examination though, Raudales admitted that her brother is Cano's best friend.

When we look at all the evidence that was before the jury in the light most favorable to the verdict, it is apparent that L.L. provided ample testimony to establish that she was under fourteen years of age and that Cano committed a series of acts of sexual abuse over a period longer than thirty days when Cano was older than seventeen years of age. *See* Tex. Penal Code Ann. § 21.02(b). In sexual abuse cases involving a child, such as this case, the testimony of the child victim alone is

10

sufficient to support a conviction. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Lee v. State*, 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd); *West v. State*, 121 S.W.3d 95, 111 (Tex. App.—Fort Worth 2003, pet. ref'd). Additionally, the jury, as the sole judge of the credibility of the witnesses, is free to accept or reject some, all, or none of the evidence presented by either side at trial. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). We conclude a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 912. We overrule Cano's first issue.

### III. Jury Selection

In his second issue, Cano complains that the trial judge erred when, on the court's own motion, it dismissed a juror over Cano's objection. Cano complains that the trial judge erroneously dismissed juror number thirty-seven because the juror could not read and write in English at a level that was satisfactory to the trial judge. Cano maintains that "a translator was used with several witnesses to interpret Spanish testimony for the jury and benefit [of] the proceeding" and that juror number thirty-seven "would have had more of an advantage with regards to understanding the testimony as the Spanish speaking witness gave testimony in their native tongue." Cano contends that the trial court abused its discretion in

11

dismissing juror number thirty-seven and that the error affected the outcome of the trial.

The record reflects that juror number thirty-seven was selected and sworn as part of the jury panel. Before the beginning of the trial, the trial court indicated that it had a concern regarding whether juror number thirty-seven had sufficient knowledge of the English language to understand the evidence and arguments that would be presented at trial. The trial court questioned juror number thirty-seven regarding his English proficiency. Over defense counsel's objection, the trial court, on its own motion, dismissed juror number thirty-seven and replaced him with the already-selected alternate juror.

The trial court's erroneous excusal of a veniremember will call for reversal only if the record shows that the error deprived the defendant of a lawfully constituted jury. *Jones v. State*, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998). There is no evidence in the appellate record that the alternate that replaced juror number thirty-seven was unfit for duty. Because there is no showing in this case that Cano was deprived of a lawfully constituted jury, we overrule Cano's second issue.

Having decided all of Cano's issues against him, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on August 18, 2014
Opinion Delivered February 18, 2015
Do not publish

Before Kreger, Horton and Johnson, JJ.