**Affirmed as Modified; Opinion Filed April 20, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00907-CR
### No. 05-13-00908-CR

### BRANDON SCOTT COPPOCK, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause Nos. F05-24282-L & F12-27931-L**

## OPINION
Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Myers

Appellant Brandon Scott Coppock appeals from his adjudication of guilt for criminal solicitation of a minor with intent to commit sexual assault and his conviction for sexual assault of a child. In two issues, he argues the trial court erred by admitting evidence of his status as a sex offender and that the judgment in 05–13–00907–CR should be modified to reflect the proper statute for the offense and appellant's plea of "not true." As modified, we affirm the trial court's judgments.

### BACKGROUND AND PROCEDURAL HISTORY

In cause 05–13–00907–CR (F05–24282–L), appellant was indicted for criminal solicitation of a minor with intent to commit sexual assault. He pleaded guilty to that offense, signed a judicial confession, was placed on deferred adjudication for eight years, and fined $2,000. In the second cause, 05–13–00908–CR (F12–27931–L), appellant was indicted for

sexual assault of a child, to which he pleaded not guilty. Based on this new offense, the State moved to adjudicate appellant's guilt in 05–13–00907–CR. Appellant pleaded not true to the allegations in the State's motion. A jury subsequently found appellant guilty of sexual assault of a child and assessed his punishment at twenty years' imprisonment and a $10,000 fine. The trial court adjudicated appellant's guilt for the solicitation of a minor offense and sentenced him to eight years in prison for that offense, which was to be served consecutively to the twenty-year sentence in the sexual assault of a child case.

C.P., the complainant in 05–13–00908–CR, testified that she was sixteen years old when she first met appellant. At the time, she was living with her aunt, mother, and other family members. C.P. used her iPhone to download a social networking application that allowed her to post an on-line profile that included her picture and stated she was nineteen years old. C.P. was contacted through the application's messaging feature by appellant, who identified himself as "Chris." They began to communicate using the application, and during those communications C.P. disclosed to appellant that she was sixteen years old and a junior in high school. Appellant did not say anything about C.P.'s age. At some point, she gave appellant her phone number and they started to exchange text messages. Appellant told her that he was twenty-nine years old, he had been married, that his name was "Chris Scott," and that he had four-year-old son, E. He also told C.P. that he was a sex offender.

Appellant and C.P. eventually started using a video application that allowed them to see one another. C.P. recalled that, by this point, they had "already established that we wanted to have a sexual relationship," so "these video chats were along the line where he would show me his penis and I would show him my body parts." Appellant told C.P. his name was "Brandon Scott." C.P. testified that appellant "didn't want to give me his real name right away." They used the video chat application to exchange pictures: appellant sent C.P. pictures of his penis

and C.P. sent appellant pictures of her breasts and vagina. They also masturbated on the video chat application.

Appellant and C.P. had discussed meeting in person. Appellant asked C.P. if she wanted to see him in person, and she said yes. On Sunday, February 5, 2012, C.P. texted appellant that she was alone, and she told him that he could come over to her house. Appellant arrived at around 7 or 8 p.m. Appellant entered through the back door, and then they went into C.P.'s room and started kissing. C.P. pulled down appellant's pants and appellant took his penis out of his boxer shorts, after which she "gave him oral"—put her mouth around appellant's penis. C.P. recalled that appellant ejaculated, but did not remember where. They stopped when they heard what sounded like someone pulling up in the front of the house. Appellant ran out the back door.

A few weeks later, on Sunday, February 12, appellant visited C.P.'s house again, this time entering through C.P.'s bedroom window. They started to kiss, and appellant removed C.P.'s underwear, after which he placed his penis in her vagina. They had sexual intercourse for two or three minutes before C.P. asked appellant to stop "[b]ecause it hurt." Appellant withdrew before he ejaculated. C.P. testified that this was the first time she had had sexual intercourse. She then sucked appellant's penis, and appellant ejaculated into her mouth. After they laid down on the bed, C.P.'s mother, C.M., returned home. When they heard her car pull up in front of the house, appellant jumped up, got dressed, and hid in a corner of the room behind some furniture. He escaped through the bedroom window as C.M. tried to open the door.[1]

C.M. testified that she, her husband, and stepson were out of the house on the evening of February 11, 2012, celebrating her mother-in-law's birthday. They returned to the house at around 1 a.m. on February 12. C.M. knocked on C.P.'s bedroom door, which was locked, and

---

[1] C.P's date of birth was March 28, 1995, which would have made her sixteen years and ten months old on February 12, 2012, the date alleged in the indictment in the sexual assault case. Appellant was born on February 22, 1982, which would have made him twenty-nine years and eleven months old on the date alleged in the indictment.

demanded she open the door. She heard what sounded like a window being opened, and then ran out of the house to find who had been in her daughter's bedroom, thinking it was a teenager. C.M. could not see the man's face because it was dark outside, but remembered hearing him say, "I'm sorry, ma'am," "I'm sorry," and "I didn't mean to do this." While chasing the man as he ran away, C.M. noticed he dropped something on the ground before he got in his car and drove away. C.M screamed for her sister to call the police. She went back to the area where she thought the man had dropped something, and found a cover to a cell phone.

Officer David Weand of the Garland Police Department responded to the call. He testified that "[t]here was a lot of chaos" at the house when he first arrived, the family "was pretty agitated," and C.P. was not forthcoming. Sensing that she was embarrassed and upset, Officer Weand kept C.P. in the bedroom, away from her family, and closed the door until the forensic investigator arrived. He subsequently transported C.P. and her mother to the police station for forensic interviews.

Detective Clint McNear conducted the forensic interview. C.P. told him that the person she had sex with that night was named Brandon Scott. Appellant was already in custody when Detective McNear interviewed C.P., and the detective told her that the man's true name was Brandon Coppock. After the interview, C.P. was taken to Parkland Hospital for a sexual assault examination. Detective McNear also testified that a search of the SD card on appellant's cell phone showed that it contained step-by-step Google map driving directions to C.P.'s house.

While Officer Weand and other officers secured the crime scene, Officer Keven Mock was on patrol in the area looking for the suspect. He did not have the suspect's name, only a "[v]ery general" description that the suspect was a white male, but had a description of the car that was seen driving away—a black Chevy Impala. He saw a vehicle matching that description and initiated a traffic stop. Officer Mock ran the name of the driver of the vehicle, appellant,

–4–

through the NCIC database and learned appellant was a registered sex offender. The officer asked appellant where he was coming from. Appellant said he had come from his girlfriend's house and that her name was C—the same name as the complainant. Appellant told the officer that he had been in the bedroom with his girlfriend and that her mother walked into the room, and that he had to jump out the window. Officer Mock asked appellant to step out of the vehicle. The officer noticed appellant's "fly was down." Officer Mock—by that point in contact with the officers at C.P.'s house—placed appellant under arrest. The officer testified that he asked appellant how old he thought C was, "and he told me he thought she was 18."

The State presented DNA evidence. Officer Clovis Holliday, a forensics investigator, testified that he collected various evidence at the crime scene, including women's underwear, bedding, and a shirt, that was later sent to a laboratory for testing. A toxicology kit and a sexual assault kit were also collected for testing. Chau Nguyen, a forensic serologist with the Texas Department of Public Safety (DPS), testified that the vaginal swabs from the sexual assault kit tested positive for acid phosphatase, a nonspecific constituent of semen. The underwear tested negative for semen. She found the presence of semen in one of the vaginal smear slides, the victim's oral smear slide, and the oral rinse. Llyen Henson, a forensic scientist with DPS, testified that the vaginal swabs did not contain enough information to do a comparison against appellant's DNA sample, but the DNA profile obtained from the oral rinse was consistent with appellant's genetic profile. Henson testified that the odds of selecting a person at random that matched the same genetic profile were one in 32.19 quadrillion (32 followed by fifteen zeroes) for Caucasians.

**DISCUSSION**

–5–

### *1. Evidence of Appellant's Status as a Sex Offender*

In his first issue, appellant contends that the trial court erred by admitting evidence of his status as a sex offender. The State responds that appellant did not continue his objection and thus failed to preserve error, that the trial court did not err by allowing the testimony, and, alternatively, that any error was harmless.

Prior to the start of trial in the sexual assault case, 05–13–00908–CR, the defense filed a motion in limine that sought to prohibit the State and its witnesses from, in part, providing any evidence or testimony regarding appellant's status as a sex offender. Shortly before the State delivered its opening statement, the defense raised the subject of the motion in limine. The State told the trial court that the witness who would be discussing appellant's status as a sex offender was the victim, C.P., and that the State wanted to offer that testimony to show motive in the case and the identity of the defendant. The trial court declined to make a ruling at that time, carrying the motion with the case until C.P. testified.

The defense re-urged the motion in limine shortly before C.P. took the stand, objecting that the evidence of appellant's status as a sex offender was irrelevant and highly prejudicial. The State replied:

> The state would offer testimony from the victim in this case that defense counsel gave her identifying characteristics about himself, like his name, first and middle name, his child's name. That he was a police officer, a Marine and a sex offender, but the case was repealed.

> The state's offering that evidence under 404(b) to show identity of the defendant.

> He gave her specific factors that show who he is. The state's not attempting to get into testimony about him registering as a sex offender, that he's on probation. Specifically that he told her he was a sex offender and his case is being repealed.

The trial court overruled the motion, informing the parties that "[y]ou can get into that . . . [a]s long as it's for identification purpose," but the court did not "want to get in extraneous stuff." The defense then asked to be heard, and the discussion between defense counsel and the trial

court reads as follows:

[DEFENSE COUNSEL]: I don't understand how the fact he's a sex offender and it's gonna be repealed goes to identity. I assume [C.P.] is gonna be able to identify him in court.

It's my understanding on identity if it goes to the witness or victim can't identify the person and there's this other information out there used to show his identity in front of the jury. I assume [C.P.] can do that. The fact he's a sex offender, how does that identify him as—

THE COURT: If he made the statement to her, it's certainly admissible. You can impeach her. On cross-examination, but certainly admissible.

[DEFENSE COUNSEL]: Because it's a statement. But I'm saying it's—well, I guess I don't understand.

THE COURT: Why is it not admissible?

[DEFENSE COUNSEL]: I believe it's highly prejudicial.

THE COURT: Everything about this case is highly prejudicial.

[DEFENSE COUNSEL]: It's over and above. How does it go to whether or not he committed the offense? I realize it's the bottom-line-type thing. The evidence has to be geared to whether or not he did it or one of the elements of the offense. I don't know how it shows his identity or one of the elements of the offense.

THE COURT: Pattern, state of mind.

[DEFENSE COUNSEL]: I guess I don't understand, Your Honor. Apologize.

THE COURT: [Prosecutor], maybe you can clarify it. Under what section you trying to bring it in?

[PROSECUTOR]: Yes, Your Honor. It's more than one such as motive, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Like this young lady was able to actually identify that. We are able to identify the defendant based on the stuff she knew about him. They had been talking a couple weeks. The information he gave her, only he would know.

THE COURT: Motion's overruled.

[DEFENSE COUNSEL]: Judge, my objection, then, can it carry or interject it for purposes when she testifies so I can preserve my—

THE COURT: Absolutely.

[PROSECUTOR]: You want a limiting instruction?

[DEFENSE COUNSEL]: Yes, we would ask for a limiting instruction as well, Your Honor.

THE COURT: That can only be considered for purposes of identification purpose, motive.

[DEFENSE COUNSEL]: Yes.

THE COURT: Bring [the jury] in.

Two of the State's witnesses ultimately provided testimony concerning appellant's status as a sex offender. The first, C.P., testified as follows:

Q. [PROSECUTOR:] Did he tell you anything else about himself?

A. Yes, that he had been—that he was a sex offender.

[DEFENSE COUNSEL]: Objection, Your Honor, to relevance and prejudicial effect.

THE COURT: Being offered under 404(b); is that my understanding?

[PROSECUTOR]: Yes, Your Honor.

THE COURT: Offered under 404(b) of the Texas Rules of Evidence. Overruled. Okay.

[DEFENSE COUNSEL]: Also ask for a limiting instruction, Your Honor. Or you did, sorry.

Q. [PROSECUTOR:] Did he say anything about being a sex offender, about that?

A. Yes, he told me a story.

Q. Did he say something was going to be repealed?

A. Yes.

Q. This is all while on the telephone with him, right?

A. Yes, we were texting.

In addition, Officer Mock testified that he ran appellant's name through the NCIC database and learned appellant was a registered sex offender:

Q. [PROSECUTOR:] Were you able to make a determination about [appellant]?

–8–

A.  Yes, ma'am.

Q.  What was that determination?

A.  That he was a registered—

[DEFENSE COUNSEL]:  Your Honor, you want me to lodge my objection or wait?

THE COURT:  Wait.

A.  That he came up NCIC as a registered sex offender.

[DEFENSE COUNSEL]:  Your Honor, I object, relevance, hearsay as well as overwhelming prejudicial effect.

THE COURT:  Overruled.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).  The trial court does not abuse its discretion unless its decision to admit or exclude the evidence lies outside the zone of reasonable disagreement.  *See Martinez*, 327 S.W.3d at 736; *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009).  We will uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case.  *See De La Paz*, 279 S.W.3d at 344.

Only relevant evidence is admissible.  *See* TEX. R. EVID. 402.  Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  TEX. R. EVID. 401.[2]  Rule 404(b) provides that evidence of an accused's "other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  TEX. R. EVID. 404(b).  Evidence of extraneous acts "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent,

---

[2] The Texas Rules of Evidence were amended effective April 1, 2015.  The amendments were part of a restyling project and changed the wording, although not the substance, of the rules cited in this opinion.  However, we follow the version of the rules applicable at the time of trial.

preparation, plan, knowledge, identity, or absence of mistake or accident[.]" *Id*. The court of criminal appeals has stated that rebuttal of a defensive theory is one of the permissible purposes for which relevant evidence may be admitted under rule 404(b). *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

Assuming, without deciding, that appellant's rule 404(b) objection was preserved, the trial court could have concluded that evidence of appellant's sex offender status was admissible to rebut appellant's defensive theory that he was the target of C.P.'s romantic pursuit and the victim of her advances and deceit regarding her true age, as well as to show the absence of mistake or accident that he was misled and unaware of C.P.'s true age. Based on this record, the trial court could have reasonably concluded appellant's testimony was admissible under rule 404(b).

Evidence that is admissible under rule 404(b) may nonetheless "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403; *Mozon v. State*, 991 S.W.2d 841, 846–47 (Tex. Crim. App. 1999). A rule 403 analysis involves a balance of: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d

637, 641–42 (Tex. Crim. App. 2006).[3] Rule 403 favors admissibility, and "the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991); *see also De La Paz*, 279 S.W.3d at 343. As with rule 404, a trial court does not abuse its discretion when it admits or excludes evidence pursuant to rule 403 so long as its decision is within the zone of reasonable disagreement. *See De La Paz*, 279 S.W.3d at 343–44. Additionally, when, as in this case, a rule 403 objection is made and overruled, the trial court has necessarily conducted the balancing test by considering and overruling the objection. *Parmer v. State*, 38 S.W.3d 661, 670 (Tex. App.—Austin 2000, pet. ref'd); *Howland v. State*, 966 S.W.2d 98, 103 (Tex. App.—Houston [1st Dist.] 1998), *aff'd*, 990 S.W.2d 274 (Tex. Crim. App. 1999) (citing *Yates v. State*, 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd)).

The relevant rule 403 factors favor admissibility. Although the defense did not actively dispute identity at trial, the complained-of evidence aided in showing how appellant described or identified himself to the victim and how Officer Mock apprehended appellant after he fled the crime scene. Officer Mock's testimony showed that he concluded appellant was the suspect from the 911 call after running a criminal history check of appellant and seeing his sex offender status, asking him further questions, and communicating with the officers at the crime scene. Appellant argues that the only purpose of the testimony was to inflame the jury and suggest a decision on an improper basis. The court of criminal appeals has noted that sexually-related misconduct and misconduct involving children are inherently inflammatory. *See Montgomery*, 810 S.W.2d at 397. But the plain language of rule 403 "does not allow a trial court to exclude

---

[3] The *Gigliobianco* court noted that this newly-worded framework merely refined and built upon its previous analysis, and brought it into line with the plain text of rule 403. *See Gigliobianco*, 210 S.W.3d at 642 n.8 ("In some of our precedents, we stated that a proper Rule 403 analysis included, but was not limited to, four factors: (1) the probative value of the evidence, (2) the potential of the evidence to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. By our decision today, we do no more than refine and build upon our previous analysis, and bring it in line with the plain text of Rule 403.") (citation omitted).

other relevant evidence when that evidence is merely prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Rule 403 only addresses "unfair" prejudice, which refers "to relevant evidence's tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). The complained-of evidence aided in showing how appellant identified himself to the victim and how he was apprehended after fleeing the crime scene; thus, this evidence did not "suggest a decision on an improper basis," *see Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010), and did not tend to confuse or distract the jury from the main issues in the case. *See Gigliobianco*, 210 S.W.3d at 641. Likewise, the testimony regarding appellant's sex offender status was arguably less serious and potentially inflammatory than the evidence presented by the State regarding the charged offense. As the trial court observed, "Everything about this case is highly prejudicial." In addition, the trial court instructed the jury through a limiting instruction in the jury charge.[4] "The trial court's instructions to the jury are a factor to consider in determining whether the jury considered the extraneous-offense evidence improperly. . . ." *Blackwell v. State*, 193 S.W.3d 1, 15 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Turning to the tendency of the evidence to confuse or distract the jury from the main issues and the amount of time consumed by the presentation of the evidence, *see Gigliobianco*, 210 S.W.3d at 641, relatively little time was spent developing the disputed testimony. The State presented a total of eight witnesses during its case-in-chief, and the testimony pertaining to the objected-to material took up less than two full pages of the reporter's record out of more than two-hundred-and-fifty total pages of trial

---

[4] The court's jury charge included the following instruction:

> You are instructed that if there is any evidence before you in this case regarding the defendant having committed extraneous offences [sic], wrongs, or acts, if any, other than the offence [sic], if any, alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other extraneous offenses, wrongs, or acts, if any were committed, and even then you may only consider the same in determining the identity of the defendant as the perpetrator of the offense alleged against him in the indictment in this case, and for no other purpose.

testimony. For all of these reasons, then, the probative value of the complained-of evidence was not substantially outweighed by the danger of unfair prejudice or any other rule 403 concerns. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641–42.

We further conclude that any error in admitting the disputed testimony was harmless. *See* TEX. R. APP. P. 44.2(b). The improper admission of evidence is non-constitutional error that an appellate court disregards unless the error affected an appellant's substantial rights. *Id*.; *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *Casey v. State*, 215 S.W.3d 870, 884–85 (Tex. Crim. App. 2007). We will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93. In this case, the victim provided explicit testimony detailing how she met appellant as well as her sexual encounters with appellant. C.P.'s testimony is sufficient to support the conviction for sexual assault. *See Lee v. State*, 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd) ("The testimony of the child victim alone is sufficient to support a conviction for sexual assault."). The jury also heard evidence that the DNA samples from the victim's mouth matched appellant's DNA profile. Furthermore, as noted previously, the jury charge contained a limiting instruction that told the jurors not to consider the evidence for any purpose other than determining the identity of the defendant. We presume that the jury followed the trial court's instructions. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). After reviewing the entire record, we therefore have a fair assurance that any error in the admission of the disputed evidence did not influence the jury, or influenced it only slightly. *See* TEX. R. APP. P. 44.2(b); *Barshaw*, 342 S.W.3d at 93. We overrule appellant's first issue.

### 2. *Modification of Judgments*

In his second issue, appellant argues that the judgments should be reformed to correctly

reflect appellant's plea of "not true" to the allegations in the adjudication motion and the proper statute for the offenses. The judgment in 05–13–00907–CR (F05–24282–L) states that appellant pleaded "true" to the adjudication motion when the record shows that appellant pleaded "not true." The judgment in that same cause also states that the statute for the offense is section 15.039 of the Texas Penal Code. The correct statutory reference for criminal solicitation of a minor is section 15.031 of the Penal Code. *See* TEX. PENAL CODE ANN. § 15.031. Further, the State points out that, in cause 05–13–00908–CR (F12–27931–L), the judgment references section 22.01 of the penal code; the correct statutory reference for sexual assault of a child is section 22.011. *See id*. § 22.011.

In addition, both judgments fail to state that the sex offender registration requirements apply to appellant. Appellant's conviction for sexual assault of a child is among those defined as a "[r]eportable conviction or adjudication" for purposes of the sex offender registration statute. *See* TEX. CODE CRIM. PROC. ANN. art. 62.001(5)(A) (conviction based on violation of section 22.011, sexual assault, is a "[r]eportable conviction or adjudication"). The statute also includes solicitation offenses as defined by chapter 15 of the penal code "to commit an offense or engage in" sexual assault. *Id.* art. 62.001(5)(A), (G). Appellant's conviction for criminal solicitation of a minor with intent to commit sexual assault is, accordingly, a "[r]eportable conviction or adjudication." As a person who has reportable convictions or adjudications, appellant would be subject to the registration requirements of the sex offender registration program. *See id*. art. 62.051.

We have the authority to correct the judgment of the court below to make the record speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *see also French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). We also have authority to modify incorrect judgments sua sponte when the necessary information is available in the

record.  *See Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd); *see also Tyler v. State*, 137 S.W.3d 261, 267–68 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Ruiz v. State*, No. 05–12–01703–CR & 05–12–01704–CR, 2014 WL 2993820, at *12 (Tex. App.—Dallas June 30, 2014, no pet.) (not designated for publication); *Medlock v. State*, No. 05–11–00668–CR, 2012 WL 4125922, *1–2 (Tex. App.—Dallas Sept. 20, 2012, no pet.) (mem. op., not designated for publication); *Johnson v. State*, No. 05–06–00037–CR, 2007 WL 60775, at *7 (Tex. App.—Dallas Jan. 10, 2007, no pet.) (not designated for publication).

Accordingly, we modify the judgment in 05–13–00907–CR to reflect that appellant pleaded "not true" to the allegations in the motion to adjudicate and that the correct statute for the offense is section 15.031 of the penal code.  We modify the judgment in 05–13–00908–CR to show that the statute for the offense is section 22.011 of the penal code.  We also modify both judgments to show that the sex offender registration requirements apply to appellant and that the age of the victim at the time of the offense was under seventeen years of age.

As modified, we affirm the judgments of conviction.


/ Lana Myers/
LANA MYERS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
130907F.U05

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRANDON SCOTT COPPOCK, Appellant

No. 05-13-00907-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas
Trial Court Cause No. F05-24282-L.
Opinion delivered by Justice Myers. Justices
Bridges and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Plea to Motion to Adjudicate:  True" should be changed to "Plea to Motion to Adjudicate:  Not True"

"Statute for Offense:  15.039 Penal Code" should be changed to "Statute for Offense:  15.031 Penal Code"

"Sex Offender Registration Requirements do not apply to the Defendant.  TEX. CODE CRIM. PROC. chapter 62" should be changed to "Sex Offender Registration Requirements apply to the Defendant.  TEX. CODE CRIM. PROC. chapter 62"

"The age of the victim at the time of the offense was N/A" should be changed to "The age of the victim at the time of the offense was younger than 17 years of age"

As **REFORMED**, the judgment is **AFFIRMED**.  We direct the trial court to prepare a new judgment that reflects these modifications.

Judgment entered this 20th day of April, 2015.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRANDON SCOTT COPPOCK, Appellant

No. 05-13-00908-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F12-27931-L.
Opinion delivered by Justice Myers. Justices Bridges and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The "Statute for Offense:  22.01 Penal Code" should be changed to "Statute for Offense:  22.011 Penal Code"

"Sex Offender Registration Requirements do not apply to the Defendant.  TEX. CODE CRIM. PROC. chapter 62" should be changed to "Sex Offender Registration Requirements apply to the Defendant.  TEX. CODE CRIM. PROC. chapter 62"

"The age of the victim at the time of the offense was N/A" should be changed to "The age of the victim at the time of the offense was younger than 17 years of age"

As **REFORMED**, the judgment is **AFFIRMED**.  We direct the trial court to prepare a new judgment that reflects these modifications.

Judgment entered this 20th day of April, 2015.