

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00219-CR
No. 07-18-00246-CR
No. 07-18-00247-CR
No. 07-18-00248-CR

**ROBERT ORTIZ, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

On Appeal from the 106th District Court
Garza County, Texas
Trial Court No. 16-2860, Counts 1-4, Honorable Carter T. Schildknecht, Presiding

July 2, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

A jury convicted appellant Robert Ortiz of two counts of aggravated sexual assault of a child[1] and two counts of indecency with a child.[2] For each conviction it assessed

---

[1] TEX. PENAL CODE ANN. § 22.021 (West 2019).

[2] TEX. PENAL CODE ANN. § 21.11 (West 2019).

punishment at confinement in prison for life.[3]   The trial court sentenced appellant accordingly and ordered the four sentences to run concurrently.   Through one issue, appellant argues the evidence was insufficient to support each of his convictions.  We will affirm the four judgments of the trial court.

## Background

On July 21, 2016, the victim's mother was unexpectedly called to work.[4]  She was unable to make daycare arrangements for five-year-old D.O. and D.O.'s half-brother, J.O. The mother asked her brother, appellant, to look after the two children.

The mother dropped the children at appellant's apartment about 10:00 a.m. and returned for them about 6:00 p.m.  There was evidence appellant's girlfriend was present when the children were dropped off but departed during the afternoon leaving appellant alone with D.O. and J.O.

J.O., a fourth grader at the time of trial, testified that appellant told him to take a nap and he complied.  He added that after he awoke D.O. told him that appellant had asked her if she wanted to take a shower and while taking a shower appellant "was making [D.O.] touch his penis."

---

[3] The punishment range was enhanced by appellant's two prior felony driving-while-intoxicated convictions.  Because the victim was younger than six years of age at the time the two aggravated sexual assault offenses were committed, the minimum term of imprisonment was increased to 25 years.  TEX. PENAL CODE ANN. § 22.021(f)(1).

[4] To protect the child-victim's privacy, we will refer to her as "D.O.," her brother as "J.O.," and her mother as "the mother."

The mother testified that when she returned to appellant's apartment for the children she found them seated on a couch. She thought both appeared sad and D.O.'s face seemed swollen, as if she had been crying. The mother testified she had a "gut feeling something was wrong." In the car on the way home, the mother testified, "[J.O.] started telling me that [appellant] had made [D.O.] take a shower with him."

The mother testified that after they reached home D.O. told her appellant asked her to take a shower with him, said to her he wanted to have sex with her, took her into the bedroom, and made her "sit on him and she said that she was begging him to kill her because it was hurting her." The mother added that D.O. told her that appellant had "peed in her mouth," and gave her a bath but did not wash her hair because he did not want the mother to know she had taken a bath. On cross-examination, the mother added D.O. told her appellant "put his middle thing in her middle thing," and "peed in her mouth."

The mother and D.O. went to the sheriff's office where they briefly spoke with a deputy. The deputy testified the mother told D.O. to tell him what happened. He explained D.O. spoke for about a minute and stated that her uncle asked her to take a shower with him and during that time he told her to touch his "little part." He then began touching her "little part before sticking his little part in her little part." The deputy further testified that according to D.O. appellant kissed her "and began having sex with her." The deputy directed the mother to immediately take D.O. to University Medical Center in Lubbock for a SANE examination.

The SANE examination was conducted the night of July 21. The nurse testified at trial that D.O. told her during the procedure, "He kissed me on my lips and had sex with

me."  When asked by the nurse what D.O. meant by "he had sex with me," D.O. responded, "He made me touch his middle part and he put his middle part in my middle part."  D.O. told the nurse that "he" was "Robert."

In further testimony, the nurse discussed her perineal examination of D.O. According to the nurse, D.O. was in pain or discomfort.  When the nurse attempted to collect a second swab from D.O.'s vaginal area the child said, "no more."  The initial swab the nurse collected was submitted for laboratory analysis but it revealed only D.O.'s DNA. In her examination, the nurse noted two small vaginal abrasions and a "little tear" on the child's hymen, and agreed such injuries were consistent with a sexual assault.

Four days later, D.O. participated in a forensic interview at the Children's Advocacy Center of Lubbock.  The interviewer testified at trial, and, over objection, a video-audio recording of the interview was played for the jury.  During the recorded interview D.O. was asked questions concerning the events of July 21.  D.O. told the interviewer appellant asked her, "Want to have sex baby?"  D.O. explained that "sex" is "being nasty." According to D.O. appellant made her "kiss his wee wee with her lips."  And appellant made her "pull his skin down on his wee wee with her hand."  She said it felt like "a wiggly snake."  D.O. stated appellant "put his middle part in her middle part" and "peed in her mouth."  She explained "the pee was yellow" and "the pee came from his wee wee."  Later in the interview she stated appellant's "wee wee touched the inside of her wee wee" while they were inside the shower and then while she lay on the floor.  On cross examination, when asked if D.O. "mention[ed] that it did hurt," the interviewer responded, "Yes."  She further acknowledged on cross-examination that D.O. told her during the interview that D.O. and appellant were unclothed.

4

According to the mother's testimony, about one week after the occurrence D.O. began counseling. The counselor testified that she saw D.O. for twenty-one weekly sessions and planned to reinitiate therapy because D.O. was again "symptomatic." According to the counselor, D.O. told her that appellant forced her to be in the shower with him and "he put his middle in her middle."

At trial, D.O. testified via a live closed-circuit television connection outside of appellant's physical presence. Her testimony is difficult to follow. The record reflects, she shook her head when asked if she remembered anything appellant did to her the last time she saw him. When asked if she had ever seen appellant without clothes on the record again states D.O. shook her head. The prosecutor followed up by asking, "Are you sure?" to which D.O. responded, "Uh-huh." She denied showering with appellant and testified she and appellant were not unclothed.

Drawings made by D.O. were admitted. She explained she and appellant were the people depicted in two of the drawings. Appellant's character was happy, she stated, because "he did stuff to me" while D.O.'s character was sad because of what appellant did to her. When asked to explain what appellant did to her D.O. responded, "I just did on the paper."

D.O.'s drawings containing characters, State's exhibits 2 and 3, depict a part protruding horizontally from the midsection of the character she identified as appellant. In exhibit 3, the drawing depicts also a yellow-colored area extending downward from the end of the protruding part. In its argument to the jury, the State referred to the drawings as showing "blue penises" and "yellow stuff coming out of it."

Appellant testified in his own defense. He denied each of the allegations against him. His testimony, particularly on cross-examination, was not clear. His defense seems to have been his girlfriend was present at his apartment on July 21 until about an hour before the mother picked up D.O. and J.O. And, he said, his girlfriend told him someone else sexually assaulted D.O.

Analysis

Through one issue appellant argues the evidence was insufficient to prove his guilt of aggravated sexual assault and indecency with a child as charged by the indictment.

Sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In our review of sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 319. "[T]he *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks,* 323 S.W.3d at 895.

6

The trier of fact is the sole judge of the credibility of evidence and the weight to be given it. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Brown v. State,* 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson,* 443 U.S. at 326; *Farris v. State,* 819 S.W.2d 490, 495 (Tex. Crim. App. 1990), *overruled on other grounds by Riley v. State,* 889 S.W.2d 290 (Tex. Crim. App. 1993). Nonetheless, it is our duty to make a "rigorous and proper application" of the evidentiary sufficiency standard, one that considers all the evidence the jury heard. *Brooks,* 323 S.W.3d at 907.

The testimony of a child sexual abuse victim alone is sufficient to support a conviction for indecency with a child or aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1) (West Supp. 2018); *Lee v. State,* 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd); *Soto v. State,* 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.). The courts will give wide latitude to testimony given by child victims of sexual abuse. *Villalon v. State,* 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc). The victim's description of what happened need not be precise and the child is not expected to communicate with the same level of sophistication as an adult. *Soto,* 267 S.W.3d at 332. Furthermore, corroboration of the victim's testimony by medical or physical evidence is not required. *Id.* And, "outcry testimony alone can be sufficient to sustain a conviction for aggravated sexual assault." *Rodriguez v. State,* 819 S.W.2d 871, 873-74 (Tex. Crim. App. 1991).

*Aggravated Sexual Assault (Counts I and II)*

A person commits the offense of aggravated sexual assault if he intentionally or knowingly causes the penetration of the sexual organ of a child by any means or causes the sexual organ of a child to contact the sexual organ of the actor (count I); causes the mouth of a child to contact the sexual organ of the actor (count II); and the child is younger than fourteen years of age. TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B)(i),(iii),(v), 22.021(a)(2)(B), (f)(1).

*Indecency with a Child by Contact (Count III)*

A person commits the offense of indecency with a child if he causes a child to engage in sexual contact. TEX. PENAL CODE ANN. § 21.11(a)(1); *Tunas v. State,* No. 07-15-00262-CR, 2017 Tex. App. LEXIS 6708, at *4 (Tex. App.—Amarillo July 19, 2017, pet. ref'd) (mem. op., not designated for publication). Penal Code section 21.11 defines "sexual contact" as "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person" "if committed with the intent to arouse or gratify the sexual desire of any person[.]" TEX. PENAL CODE ANN. § 21.11(c)(1),(2). The intent to arouse or gratify the defendant's sexual desire may be inferred from a defendant's conduct and all surrounding circumstances. *Jones v. State,* 229 S.W.3d 489, 497 (Tex. App.—Texarkana 2007, no pet.).

*Indecency with a Child by Exposure (Count IV)*

A person commits the offense of indecency with a child if, with a child younger than 17 years of age, with the intent to arouse or gratify the sexual desire of any person, the actor exposes any part of his genitals, knowing the child is present. TEX. PENAL CODE ANN. § 21.11(a)(2)(A).

Appellant constructs his no-evidence challenge on perceived inconsistencies and omissions in D.O.'s testimony, the force of his on-the-stand denials of any unlawful conduct, and the absence of any DNA evidence linking him to an offense.

Appellant's argument is reminiscent of the factual sufficiency review standard formerly applied by Texas courts. Under that former standard, "[e]vidence that is legally sufficient . . . can be deemed factually insufficient in two ways: (1) the evidence supporting the conviction is 'too weak' to support the factfinder's verdict, or (2) considering conflicting evidence, the factfinder's verdict is against the great weight and preponderance of the evidence." *Laster v. State,* 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (internal quotation marks omitted). But in *Brooks* the Texas Court of Criminal Appeals established the *Jackson* constitutional standard of review as the exclusive standard for evidentiary sufficiency challenges to criminal convictions. *Brooks,* 323 S.W.3d at 902. Under the *Jackson* standard we defer to the jury's weight and credibility determinations and for that reason view the evidence in the light most favorable to the verdict rather than in a neutral light. *Brooks,* 323 S.W.3d at 899-900 ("the difference between a factual-sufficiency standard and a legal-sufficiency standard is that the reviewing court is required to defer to the jury's credibility and weight determinations (i.e.,

9

it must view the evidence in the light most favorable to the verdict) under a legal-sufficiency standard while it is not required to defer to a jury's credibility and weight determinations (i.e., it must view the evidence in a 'neutral light') under a factual-sufficiency standard"). Any inconsistencies in the evidence are resolved in favor of the verdict. *Martines v. State,* 371 S.W.3d 232, 239-40 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)). The jury was not obligated to believe appellant's denials but was free to assign weight and credibility to other pieces of evidence including the testimony relating D.O.'s outcry, the testimony of those recalling D.O.'s immediate description of the July 21 events, D.O.'s responses to the questions of a forensic interviewer, made within days of the assault, and D.O.'s drawings admitted at trial.[5]

Having reviewed all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of each of the four offenses beyond a reasonable doubt. Appellant's sufficiency challenge is overruled.

Claim of Double Jeopardy Violation

In the final paragraph of appellant's brief, without citation to the record or case authorities, he appears to contend he received multiple punishments for the same offense because, under the facts of this case, indecency with a child by exposure is a lesser

---

[5] The State's brief argues the protruding part depicted in D.O.'s drawing "is pretty clearly an erect penis drawn on Appellant." The State elsewhere characterizes its exhibit 3 as depicting appellant "with an erect penis and yellow stuff coming out the end, while standing beside a drawing of [D.O.] who was sad, all 'because of what he did to me.'" We agree jurors could have so interpreted the drawing and her testimony.

10

included offense of aggravated sexual assault and indecency by contact. Appellant did not raise this claim in the trial court. Like the State in its response brief, we interpret the complaint as an alleged violation of the Double Jeopardy Clause of the United States Constitution.

The Double Jeopardy Clause, among other things, generally prohibits multiple punishments for the same offense. U.S. CONST. AMEND. V.; *Brown v. Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *Ex parte Cavazos,* 203 S.W.3d 333, 336 (Tex. Crim. App. 2006). A multiple-punishments double jeopardy violation may be shown if conduct is punished and the same conduct, plus more, is punished a second time. *Collins v. State,* No. 02-16-00146-CR, 2017 Tex. App. LEXIS 285, at *9 (Tex. App.—Fort Worth Jan. 12, 2017) (citing *Langs v. State,* 183 S.W.3d 680, 685 (Tex. Crim. App. 2006)). But no multiple punishments double jeopardy violation is shown where the charged offenses, even though they occurred during a single transaction, constituted two separate and distinct acts. *See Speights v. State,* 464 S.W.3d 719, 724 (Tex. Crim. App. 2015) (concluding "the Legislature intended that both theories of indecency with a child [by exposure and contact] may be pled and punished, even when the exposure precedes the contact and even when both acts occur within the same transaction").

The State argues appellant's complaint was not preserved in the trial court. Generally, preservation of a double jeopardy claim requires the defendant to object at or before the time the charge is submitted to the jury. *Cabral v. State,* 170 S.W.3d 761, 764 (Tex. App.—Fort Worth 2005, pet. ref'd) (citing *Gonzalez v. State,* 8 S.W.3d 640, 642 (Tex. Crim. App. 2000)). An appellant is excused from the preservation requirement, however, when the undisputed facts show the double jeopardy violation is clearly

11

apparent on the face of the record and enforcement of usual rules of procedural default serves no legitimate state interest.  *Cabral,* 170 S.W.3d at 643.

In this case, we find appellant waived his double jeopardy complaint by failing to first present it to the trial court.  TEX. R. APP. P. 33.1(a).  The undisputed facts appearing on the face of the record do not clearly show a double jeopardy violation.  Moreover, there was evidence appellant committed four separate and distinct acts beginning with indecency by exposure in the shower.  *See Hart v. State,* 481 S.W.3d 679, 684 (Tex. App.—Amarillo 2015, no pet.) ("Notwithstanding that [defendant] was charged with offenses occurring during a single incident, he committed two separate and distinct acts"); *Raybon v. State,* No. 07-00-00475-CR, 2001 Tex. App. LEXIS 5753, at *5 (Tex. App.—Amarillo Aug. 22, 2001, no pet.) (mem. op., not designated for publication) (finding because acts giving rise to indecency and sexual assault could have happened at different times a double jeopardy violation was not shown).  We overrule appellant's double jeopardy complaint.

## Conclusion

Having overruled appellant's sole appellate issue, we affirm the four judgments of the trial court.

James T. Campbell
Justice

Do not publish.